**Robert G. CRONSON, as Auditor General of the State of Illinois, and Individually, Plaintiff,**

v.

**Hon. William G. CLARK, Hon. Daniel P. Ward, Hon. Joseph H. Goldenhersh, Hon. Howard C. Ryan, Hon. Thomas J. Moran, Hon. Seymour Simon, Hon. Ben Miller, respectively, as Chief Justice and Justices of the Supreme Court of Illinois; Juleann Hornyak, Supreme Court Clerk; and Hon. William M. Madden, Acting Director of Administrative Office of Ill. Courts, Defendants.**

No. 86–3180.

United States District Court, C.D. Illinois, Springfield Division.

Oct. 14, 1986.

Witwer, Moran, Burlage & Witwer, Chicago, Ill., Alfred H. Greening, Williamsville, Ill., for plaintiff.

Michael V. Casey, Roger Flahaven, Asst. Attys. Gen., Richard J. Phelan, Mary Kathryn Kelly, Terry F. Mortiz, Joanne M. Harmon, Chicago, Ill., Francis J. Giganti, Springfield, Ill., Michael J. Hayes, Asst. Atty. Gen., Chicago, Ill., for defendants.

## OPINION AND ORDER

MILLS, District Judge:

Each state in ratifying the constitution is considered as a sovereign body independent of all others, and only to be bound by its own voluntary act. In this relation then the new constitution will, if established, be a *federal* and not a *national* constitution.

*The Federalist,* No. 39 (J. Madison)

The Auditor General of Illinois requests this federal trial court—under the guise of

42 U.S.C. § 1983—to preliminarily enjoin a mandamus action pending before the Supreme Court of Illinois.

The question presented is: May this Court, consistent with the principles of comity and federalism, enjoin the proceedings before the state's highest tribunal, which is alleged to have prejudged the cause, where the substantive issue turns entirely upon a construction of state constitutional law and implicates important state interests—the fiscal integrity of the state judiciary and the duties of a state officer.

This Court abstains: The injunction is denied.

### Background

William Madden, Acting Director of the Administrative Office of the Illinois Courts, has brought an original proceeding in mandamus before the Supreme Court of Illinois seeking to compel the Petitioner, as Auditor General of Illinois, to conduct an audit of the funds appropriated by the Illinois General Assembly and expended by the Administrative Office. *Madden v. Cronson*, No. 63255 (Ill.Sup.Ct. filed March 27, 1986). Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the Auditor General now petitions this Court to enjoin further proceedings in that state action, contending that its continuation will result in a violation of due process under the Federal Constitution. The Petitioner claims, *inter alia*, that the Supreme Court

has prejudged his case. Members of the Court, he argues, have demonstrated bias and prejudice through extra-judicial prejudgments of the substantive constitutional and statutory issues involved. Jurisdiction is premised upon 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).[1]

Underlying the present controversy is a continuing conflict between the Auditor General and the Supreme Court of Illinois. The problem relates to the Petitioner's state constitutional and statutory authority to conduct financial audits of the Attorney Registration and Disciplinary Commission ("Commission") and the State Board of Law Examiners ("Board") as part of the regular audit of the state supreme court. Petitioner claims that the Illinois Constitution mandates a public audit of Commission and Board funds, and hence, precludes him from auditing only the Court's appropriated funds. The Supreme Court disagrees. Since neither the Commission nor the Board receive funding from the General Assembly, but rather operate on fees collected from Illinois attorneys and bar applicants respectively, the Court maintains that the agencies' financial affairs do not fall within the Petitioner's auditing powers. As a consequence of this dispute, the Auditor General has refused since 1979 to audit the funds appropriated to the Supreme Court.[2]

The current dispute arose when, in December 1985, Roy Gulley, then Director of

---

1. Under *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), 42 U.S.C. § 1983 is an expressly authorized exception to the anti-injunction statute, 28 U.S.C. § 2283.

2. The proper scope of the Auditor General's authority is the subject of a declaratory judgment action now pending in the Circuit Court of Cook County—an action inextricably wound with the present controversy. *Chicago Bar Ass'n v. Cronson*, No. 82–L–50131 (Cir.Ct. Cook Co. filed July 26, 1982). The case went forward following the Supreme Court of Illinois' refusal to accept original jurisdiction of a petition for writ of mandamus filed by the Petitioner and denial of his motion that it recuse itself and appoint a substitute court to review the motion to reconsider. *People ex rel. Cronson v. Attorney Registration & Disciplinary Comm'n*, No. 57179 (Ill.Sup.Ct. filed August 23, 1982).

At issue in *Chicago Bar* are the parties' varying interpretations of the Illinois Constitution and statutes. Article VIII, Section 3 of the constitution provides in Part: "The Auditor General shall conduct the audit of public funds of the State." At issue is whether the funds of the Commission and Board are "public funds" within the meaning of the constitution and enacting statute. *Ill.Rev.Stat.* ch. 15, ¶ 301–1 (1985). The parties also disagree as to whether the Board and Commission are "state agencies" under the definition set forth in *Ill.Rev.Stat.* ch. 15, ¶ 301–7. The Auditor General has jurisdiction to audit all state agencies. *Id.* ¶ 303–1. Finally, the Supreme Court contends an audit of the Commission and Board would constitute a violation of the principle of separation of powers as an intrusion upon the Court's judicial power.

the Administrative Office of the Illinois Courts, requested Petitioner to conduct an audit of Supreme Court appropriations. The Auditor General refused. Thereafter, Respondent Madden, having assumed the directorate, filed a motion for original jurisdiction and petition for writ of mandamus with the Supreme Court of Illinois alleging the Auditor General's continuing failure to perform his auditing duties in violation of Article VIII, Section 3 of the Illinois Constitution and the State Auditing Act. The Supreme Court accepted jurisdiction. It then denied Petitioner's motion to dismiss for want of jurisdiction and due process.

The Auditor General now turns to this tribunal for injunctive relief, maintaining that the Supreme Court of Illinois cannot impartially decide the issue of whether he has neglected his state constitutional duties by failing to audit the appropriated funds.[3]

## I.

■ Since the eloquent characterization of "Our Federalism" by Mr. Justice Black in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court of the United States has reiterated in a long line of decisions the principle that where important state interests are involved, a federal court should not act to restrain pending state proceedings when petitioner has an adequate remedy at law and will not suffer great and immediate irreparable injury. *See, e.g., Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Indeed, the hesitancy of federal courts to intervene in state litigation has long been supported by the desire to avoid duplicate legal proceedings where the first suit allows parties an adequate opportunity to raise constitutional

claims. *Younger*, 401 U.S. at 44, 91 S.Ct. at 750. But as Justice Black explained, the doctrine is reinforced by an even more vital consideration—the notion of *comity:*

A system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the state.

*Id.* Of course, a proper respect for state brethren permits the Court to assume that they will vigorously safeguard federal constitutional rights. *Middlesex Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Thus, *Younger* and its progeny reflect the national policy that only in "extraordinary circumstances" will federal courts interfere with ongoing state proceedings.

Unquestionably, the substantiality of the state's interests in its proceedings has been an important factor in abstention analysis from the beginning. *Id.* at 432, 102 S.Ct. at 2521. The Supreme Court of the United States has consistently ruled that when federal courts are confronted with requests for injunctive relief from state civil functions, "they should abide by standards of restraint that go well beyond those of private equity jurisprudence." *Huffman*, 420 U.S. at 603, 95 S.Ct. at 1208. But the analysis does not end with a finding of state interest. Federal courts must also determine whether petitioner has an adequate remedy at law and hence will suffer no irreparable injury: "Restated in the abstention context, the federal court should not exert jurisdiction if the plaintiffs had an opportunity to present their federal

**3.** Specifically, in hearings before the Illinois Legislative Audit Commission to ascertain the reasons for the refusal to permit public audit of the Commission and Board, the Supreme Court of Illinois, speaking through its respective Chief Justices and administrators, have asserted that the affairs of the agencies do not come within the public domain. Thus, the Auditor General

claims the Supreme Court cannot, consistent with procedural due process requirements, determine the propriety of what he believes is a constitutionally forbidden partial audit when its members allegedly agree with Respondent Madden that only a complete audit of the Court is sought.

claims in the state proceedings." *Moore,* 442 U.S. at 425, 99 S.Ct. at 2378.

Therefore, this Court's initial inquiry is two-fold: *First,* do the Supreme Court proceedings implicate important state interests; and, *second,* does the Auditor General have an adequate opportunity to raise his due process claim in the state court. *See Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521.

## A

The principle that state courts are the final expositors of state law is indisputable. In fact, abstention cases uniformly reflect the axiom that the threat to our system of government inherent in federal court interpretation of state law is not trivial. *Moore,* 492 U.S. at 427–29, 99 S.Ct. at 2379–80. Moreover, the precept becomes increasingly pervasive when the resolution of the substantive issues will inevitably affect the internal structure of the sovereign's government.

The Auditor General cannot reasonably challenge the importance of the pending state mandamus hearing to the proper operation of Illinois government. At the heart of that controversy are complex questions of state constitutional and statutory law which bear upon the duties of a legislative officer, and the fiscal integrity of the judiciary. Whether the Auditor General is empowered to audit Supreme Court agencies is undeniably a query for the state tribunals. As the Supreme Court of the United States has indicated: "Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation." *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521; *see also Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). The only remaining question then is the competency of the Supreme Court of Illinois to fairly adjudicate Petitioner's constitutional claim.

## B

The policy of *equitable restraint* expressed in cases such as *Younger* is based in part on the presumption that state tribunals generally provide the parties with a fair and sufficient opportunity to vindicate federal constitutional rights. Thus, the policy of abstention should be set aside only where "extraordinary circumstances" render a state court incapable of fairly deciding the issues before it. *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). Of course, "extraordinary circumstances" is an elusive term, subject to a wide variety of interpretations. For present purposes, however, this Court need only address the issue raised by Petitioner's motion: Whether the alleged bias of the Supreme Court of Illinois rises to the level of a due process violation. To phrase it in terms of more traditional injunction analysis: Does Petitioner have a reasonable likelihood of prevailing on the merits? *Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380 (7th Cir.1984); *see also Kugler,* 421 U.S. at 123–29, 95 S.Ct. at 1530–33 (Petitioner's claim that he cannot obtain a fair hearing in the state courts is without merit and hence, exceptions to the *Younger* doctrine are inapplicable).

■ Petitioner contends, and this Court agrees, that a fair tribunal is a basic requirement of due process: "To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Likewise, hearings before a partial tribunal are not constitutionally acceptable simply because the disadvantaged party has the opportunity to appeal. *Ward v. Village of Monroeville,* 409 U.S. 57, 61, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972). But Petitioner's broad legal principles are alone insufficient to influence the outcome of this case. Only through a careful study of its superiors' legal opinions involving personal bias and due process may this Court determine the merit of Petitioner's claim.

*Younger* abstention was directly in issue in *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), where the

Court held that a predicate for dismissal was lacking when the Alabama Board of Optometry was found incompetent to adjudicate a matter by reason of a pecuniary interest. In *Gibson,* the Board, composed solely of private practitioners, sought to revoke the licenses of optometrists employed by business corporations on the basis of unprofessional conduct. Because of its makeup, the Court concluded that the Board's success would possibly redound to the personal benefit of its members. Although the district court considered another source of bias—prejudgment of the facts—sufficient to disqualify the board as well, the Supreme Court affirmed only on the ground of personal financial interest. *Id.* at 578–79, 93 S.Ct. at 1697–98.

The Seventh Circuit followed a similar path in *United Church of the Medical Center v. Medical Center Comm'n,* 689 F.2d 693 (1982). In that case, provisions of the Illinois Medical Center Act entitled the Defendant to preside over title reverter proceedings and determine whether certain property should revert to it. The Court held that the Commission's financial stake in the proceedings' outcome made it an unconstitutionally biased decisionmaker. While Plaintiff also alleged the Commission's prejudgment of the facts, the Court declined to reach the question: "We do not ... reach the question unreached by the Supreme court in *Berryhill,* whether sufficient indicia of prejudgment can also rise to the level of a violation of due process ..." *Id.* at 700.

Clearly, federal courts confronted with the issue hesitate to elevate a tribunal's possible prejudgment to the level of a due process violation. In *Federal Trade Comm'n v. Cement Inst.,* 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948), the Supreme Court squarely addressed the issue of whether the alleged prejudgment of a controversy alone was sufficient to disqualify an administrative tribunal. There, the FTC charged the Defendants with unfair competition and price discrimination. While the proceedings were pending, Respondent Marquette Cement Company asked the Commission to disqualify itself

charging that it had prejudged the issues and was prejudiced against the cement industry generally. The Commission refused.

Although Marquette introduced numerous reports to Congress as well as testimony given by members of the FTC before Congressional committees to make clear that the Commission believed Defendants' activities violated the Sherman Act, the Court held that this belief did not disqualify the Commission. *Id.* at 700, 68 S.Ct. at 803. Noting that most matters relating to judicial disqualification do not rise to a constitutional level, the Court stated:

[No] decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law. *Id.* at 702–03, 68 S.Ct. at 804.

*Cement Institute* is indeed persuasive to, if not binding upon, this federal trial court. In the present matter, as in that case, complainant has presented testimony and other communications of court members tending to show a possible prejudgment of the issues involved. But since *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), the Supreme Court has consistently declared that personal bias alone without some showing of an additional interest—pecuniary or otherwise—fails to rise to the level of due process. In fact, the Court recently reaffirmed this long-standing principle in *Aetna Life Insurance Co. v. Lavoie,* —— U.S. ——, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).

That case involved a charge of bad faith refusal to pay an insurance claim. The Supreme Court of Alabama, in a *per curiam* opinion written by Justice Embry, affirmed a $3.5 million punitive damage award against Aetna, clarifying the law in several respects. While an application for rehearing was pending, however, appellant learned that at the time of the opinion the Justice had two actions pending against insurance companies for bad faith failure to pay claims. One of those suits was a class action on behalf of state employees

insured under a group plan. Aetna then filed motions challenging Justice Embry's participation in the matter and alleging the entire court should recuse itself based upon its potential interest in the class action.

Explaining that its decision answered the question of under what circumstances the Constitution requires disqualification, the Court in *Aetna* ruled that a "direct, personal, substantial and pecuniary interest" was necessary to rise to a due process level. *Id.* at 1586–88. Therefore, Justice Embry's participation was unconstitutional. The settlement value of his case had increased as a result of the opinion. Considering the possible bias of the remaining Justices, however, the Court stated: "We find it impossible to characterize [their] interest as direct, personal, substantial and pecuniary." *Id.* at 1587–88.

In its opinion, the Court recognized that most questions of judicial disqualification were subject to legislative discretion. Only in extreme cases would recusal on the basis of alleged hostility towards a party be constitutionally mandated: "A judge should disqualify himself where he has a personal bias or prejudice concerning a party. But that alone would not be a sufficient basis for imposing a constitutional requirement under the Due Process Clause." *Id.* at 1585; *see also Margoles v. Johns*, 660 F.2d 291, 297 (7th Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982).

▮ Thus, the Supreme Court of the United States has formulated a narrow rule by which this Court is bound. Simply stated, the mere possibility of prejudgment alone cannot rise to a constitutional plane. A more substantial interest is required. The fact that certain members of the Supreme Court of Illinois have entertained views contrary to the Petitioner's does not necessarily mean that the Court's mind is irrevocably closed on the subject. Certainly, the present controversy does not personally involve the individual Justices. It concerns only the administrative functioning of agencies under the jurisdiction of the third branch of government. This Court cannot say that the tribunal's possible bias

is so substantial as to require disqualification under the Fourteenth Amendment of the Federal Constitution.

The state interest is far too great and the potential prejudice is far too little.

Abstention is proper.

*Ergo*, Petitioner's motion for a preliminary injunction is DENIED.