(No. 63255

WILLIAM M. MADDEN, Acting Director of the Administrative Office of the Illinois Courts, Plaintiff, v. ROBERT G. CRONSON, Auditor General, Defendant.

*Opinion filed December 3, 1986.*

SIMON, J., specially concurring.

Richard J. Phelan, of Phelan, Pope & John, Ltd., of

Chicago, for plaintiff.

Neil F. Hartigan, Attorney General, of Springfield (Samuel W. Witwer, Sr., of Chicago, Special Assistant Attorney General), in a special and limited appearance to contest jurisdiction, for defendant.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Pursuant to our Rule 381(a) (87 Ill. 2d R. 381(a)), plaintiff, William M. Madden, in his capacity as the Acting Director of the Administrative Office of the Illinois Courts, filed a motion for leave to file a complaint requesting that this court issue a writ of *mandamus* ordering defendant, Robert G. Cronson, Auditor General, to audit the funds appropriated by the General Assembly to the Supreme Court and disbursed at its direction by the Administrative Office of the Illinois Courts. Plaintiff's motion was allowed.

The complaint alleged that during the period commencing with his appointment to the office of Auditor General, through June 30, 1978, defendant conducted financial audits of all public funds appropriated by the General Assembly to the Supreme Court; that from the end of fiscal year 1979 until the present, defendant has failed and refused to conduct such audits; that Roy O. Gulley, then Director of the Administrative Office of the Illinois Courts, by letter dated December 11, 1985, requested that defendant audit said funds and that defendant refused to do so and persists in his refusal to conduct such audits.

Defendant filed a document styled "Special and limited appearance and motion to dismiss for want of jurisdiction based on due process grounds" in which he contends that this court is "disqualified and lacking in jurisdiction" for the reason that "it would be trying its

own case in violation of [defendant's] due process rights." He states therein that plaintiff is "an agent and employee of the Supreme Court" and that the instant action "could not conceivably have been filed by [plaintiff] except upon the express direction of the court and in its behalf." Defendant also alleges that the court is without jurisdiction "on due process grounds because of disqualifying bias in having prejudged adversely to [defendant] an issue of the [defendant's] auditing authority which is inseparably related to the issue presented in this cause." Defendant states that "he has not audited the funds appropriated to the court since the end of fiscal year 1978 due to his conviction that he may not perform fragmentary or selective audits." Defendant's motion was denied and a briefing schedule was set. Defendant advised the clerk of this court that for reasons stated in the "special and limited appearance," he would not file a brief. Subsequently, defendant instituted an action in the United States District Court for the Central District of Illinois seeking relief under section 1983 of the Civil Rights Act (42 U.S.C. sec. 1983 (1982)) and for an injunction to stay further proceedings in this court. The district court denied injunctive relief, and its order was affirmed by the Court of Appeals for the Seventh Circuit. The matter was set for oral argument before this court, and defendant did not appear.

The position taken by defendant apparently stems from the failure to distinguish between the issues in this case and those presented in a cause pending in the circuit court. Involved in the other cause is the question whether defendant is authorized to audit the funds of the Attorney Registration and Disciplinary Commission and the Board of Law Examiners. That question is irrelevant to the issues presented in this case.

Article VIII of the Constitution of 1970, in pertinent part, provides:

"SECTION 2. STATE FINANCE

\* \* \*

(b) The General Assembly by law shall make appropriations for all expenditures of public funds by the State. Appropriations for a fiscal year shall not exceed funds estimated by the General Assembly to be available during that year." Ill. Const. 1970, art. VIII, sec. 2(b).

"SECTION 3. STATE AUDIT AND AUDITOR GENERAL

(a) \* \* \* The General Assembly, by a vote of three-fifths of the members elected to each house, shall appoint an Auditor General and may remove him for cause by a similar vote. \* \* \*

(b) The Auditor General shall conduct the audit of public funds of the State. He shall make additional reports and investigations as directed by the General Assembly. \* \* \*" Ill. Const. 1970, art. VIII, secs. 3(a), (b).

The Illinois State Auditing Act (Ill. Rev. Stat. 1985, ch. 15, par. 301—1 *et seq.*), in pertinent part, provides:

" 'Public funds of the State' has the meaning ascribed to that term in Article VIII of the Constitution." Ill. Rev. Stat. 1985, ch. 15, par. 301—18.

In the exercise of its constitutional duty to regulate the admission and discipline of the bar, this court adopted Rules 702 (87 Ill. 2d R. 702) and 751 (103 Ill. 2d R. 751), which in pertinent part provide:

"Rule 702. Board of Law Examiners

(a) The Board of Law Examiners shall consist of five members of the bar, appointed by the Supreme Court, and each shall serve a term of three years and until his successor is duly appointed and qualified.

\* \* \*

(c) The members of the board and the officers thereof shall receive such salaries as the court may provide and such further sum for necessary disbursements as may be approved by the court, all payable out of moneys received from applicants for admission to the bar as fees for examination and admission.

(d) The board shall audit annually the accounts of its treasurer and shall report to the court at each November term a detailed statement of its finances, together with such recommendations as shall seem advisable. All fees paid to the board in excess of its expenses shall be applied as the court may from time to time direct." 87 Ill. 2d Rules 702(a), (c), and (d).

"Rule 751. Attorney Registration and Disciplinary Commission.

(a) Authority of the Commission. The registration of, and disciplinary proceedings affecting, members of the Illinois bar shall be under the administrative supervision of an Attorney Registration and Disciplinary Commission.

\* \* \*

(e) Duties. The Commission shall have the following duties:

\* \* \*

(5) To collect and administer the disciplinary fund provided for in Rule 755, and, on or before April 30 of each year, file with the court an accounting of the monies received and expended for disciplinary activities and a report of such activities for the previous calendar year. Such accounting and report shall be published by the court. There shall be an independent annual audit of the disciplinary fund as directed by the court, the expenses of which shall be paid out of the fund; \*\*\*." 103 Ill. 2d Rules 751(a), (e)(5).

Defendant does not dispute that through June 30, 1978, he conducted audits of the funds appropriated to the court. In 1977, the court directed the Board of Law Examiners (Board) and the Attorney Registration and Disciplinary Commission (Commission) to refuse defendant's demand that he be permitted to conduct a performance audit of their records. The refusal to permit the audit was based on the conclusion that since the funds collected and expended by the Board and Commission were not subject to the appropriation provisions of article VIII of the Constitution, they were not "public

funds" within the contemplation of article VIII. The question whether those funds are "public funds" is the issue in a cause pending in the circuit court of Cook County (Chicago Bar Association v. Cronson, No. 82L50131).

Defendant, in his "special and limited appearance," is critical of this court for having denied his motion for leave to file an original action seeking the issuance of a writ of *mandamus* directing the Commission and Board to make their records available to defendant. This criticism conveniently overlooks the fact that the action involving the same issue was already pending in the circuit court.

In his "special and limited appearance" defendant urges that this court lacks jurisdiction because it is a real party in interest in this cause and cannot unbiasedly hear its own case. (See *In re Murchison* (1955), 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623.) Defendant argues that because plaintiff, whose constitutional duty is to "assist the Chief Justice in his duties" (Ill. Const. 1970, art. VI, sec. 16), is an agent and employee of the Illinois Supreme Court, this action was obviously filed by plaintiff upon the express direction of the court and in its behalf.

Concerning the court's alleged lack of jurisdiction, defendant argues that because members of the court have expressed opinions pertinent to the court's refusal to permit defendant to audit Board and Commission funds and because the audit of those funds is not separable from that of appropriated funds, the court has prejudged the issue here. This, he argues, precludes a fair and impartial consideration of the issue and violates his right to due process. Defendant bases his conclusions concerning "prejudgment" on statements made by the Chief Justice and the Director of the Administrative Office during hearings before the Legislative Audit Com-

mission in explaining the court's reasons for refusing to permit defendant's audit of the funds collected and disbursed by the Board and Commission. These statements, he asserts, evidence an "unyielding position" on the issues. (Legislative Audit Commission hearings, January 10, 1978, February 28, 1978, November 28, 1979.) Defendant asserts that several members of the court have also expressed these same views in extrajudicial contexts. Defendant also points out that the court allowed, without delay, plaintiff's motion for leave to file a complaint for *mandamus* in this cause, but denied a similar motion by defendant.

Conceivably, these assertions might be relevant to the question whether all the judges of this court, or any one of them, should recuse themselves, but they do not affect this court's jurisdiction. This court's original jurisdiction in cases relating to *mandamus* stems from article VI of the Constitution of 1970. The court has jurisdiction to decide the issues, be the decision right or wrong, and its jurisdiction is not diminished by the conclusional assertions in defendant's "special and limited appearance."

Although not previously presented to this court, the Supreme Court in recent years has, on several occasions, considered the question of the nature and extent of the interest required to render a judge's failure to recuse himself a violation of due process. (*Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S. 813, 89 L. Ed. 2d 823, 106 S. Ct. 1580.) The rule distilled from the opinions is that the interest is violative of due process if it is "direct, personal, substantial, [and] pecuniary." (*Ward v. Village of Monroeville* (1972), 409 U.S. 57, 60, 34 L. Ed. 2d 267, 270, 93 S. Ct. 80, 83.) Applying either that test or the less stringent one advocated by Mr. Justice Brennan in his concurring opinion in *Aetna Life Insurance Co. v. Lavoie*, we hold that the judges of this court do not have an interest sufficiently direct or substantial so that their

participation in the decision of this case is violative of due process.

The decision of the court to direct the Board and Commission to refuse to permit defendant to audit their respective accounts, upon which defendant's assertions of "prejudgment" and "bias" were based, was made in the course of the court's exercise of its authority to regulate the admission and discipline of the bar, and not as a decision in pending litigation. That decision, unlike the decision in *United States v. Will* (1980), 449 U.S. 200, 66 L. Ed. 2d 392, 101 S. Ct. 471, has no pecuniary effect on the individual justices of this court, and we are not persuaded that any member of the court, if the relevant authorities indicate otherwise, feels compelled to reach the same conclusion in a judicial proceeding as that reached in a prior administrative decision.

If there were any merit to defendant's contention, we would be required to consider the applicability of the common law rule of necessity. (See *United States v. Will* (1980), 449 U.S. 200, 66 L. Ed. 2d 392, 101 S. Ct. 471.) Because we find the contention to be without merit, we perceive no need to discuss the rule of necessity.

We consider now the merits of plaintiff's complaint. Article VIII of the Constitution clearly and unequivocally provides that the General Assembly "shall make appropriations for all expenditures of public funds by the State" (Ill. Const. 1970, art. VIII, sec. 2(b)) and that "[t]he Auditor General shall conduct the audit of public funds of the State" (Ill. Const. 1970, art. VIII, sec. 3(b)). Although the question whether the funds collected and disbursed by the Board and Commission are "public funds" is in issue in pending litigation, there is no question that the funds appropriated to the court are "public funds" within the contemplation of both article VIII of the Constitution and the Illinois State Auditing Act. The Act defines the scope of the Auditor General's jurisdic-

tion (Ill. Rev. Stat. 1985, ch. 15, par. 303—1), provides for mandatory audits (Ill. Rev. Stat. 1985, ch. 15, par. 303—2), authorizes the Auditor General to adopt regulations establishing audit standards (Ill. Rev. Stat. 1985, ch. 15, par. 303—7), and provides that the term "public funds" has the same meaning in the Act as in the Constitution (Ill. Rev. Stat. 1985, ch. 15, pars. 301—18, 301—19). The Act also provides that the Auditor General report to the Legislative Audit Commission, the Speaker of the House, and the President of the Senate, "each instance in which a State agency fails to cooperate promptly and fully" with the office of the Auditor General, and authorizes the Auditor General to "institute and maintain any action or proceeding to secure compliance with this Act and the regulations adopted hereunder" (Ill. Rev. Stat. 1985, ch. 15, par. 303—12). Neither the Constitution nor the Act, however, confers upon the Auditor General authority to refuse to conduct an audit mandated by the express provision of article VIII of the Constitution.

Since we have not been favored with a brief or an appearance on behalf of defendant, we are unable to say whether there is any contention that a regulation adopted under the statutory authority conferred upon defendant serves to relieve him of the obligation to complete the audit directed by article VIII. He contends in the limited and special appearance that the audit of the appropriated funds without an audit of the funds managed and disbursed by the Commission and the Board would violate standard accounting principles and that a "fragmented" audit is not permissible. This contention is utterly without merit. Those funds are completely segregated from appropriated funds and are neither turned over to the State Treasurer nor disbursed by the Comptroller. The accounts are audited by independent certified public accountants, and their reports are made pub-

lic. We fail to perceive any reason that this arrangement, which prior to fiscal year 1979 presented no impediment to defendant's performing his duty, has suddenly done so. We note parenthetically that defendant has offered no explanation, and that no provision of the professional standards to which defendant refers in the special and limited appearance supports his position.

As was noted earlier in this opinion, the issue before us is not whether the Auditor General may audit the funds of the Board and Commission, but whether defendant has the nondiscretionary duty to audit the funds appropriated to the court by the General Assembly. Whether under the Constitution or the statute, or a combination of both, he is authorized to audit the funds of the Board and Commission, will ultimately be decided in the action presently pending in the circuit court. Any contention that this court should recuse itself can be considered at the appropriate time.

*Mandamus* is an extraordinary remedy appropriate to enforce as a matter of public right the performance of official duties by a public officer where no exercise of discretion on his part is involved. (*People ex rel. Dolan v. Dusher* (1952), 411 Ill. 535, 538; *People ex rel. Shultz v. Russel* (1920), 294 Ill. 283, 285.) That is the situation presented here, and the writ of *mandamus* will issue.

*Writ issued.*

JUSTICE SIMON, specially concurring:

I agree with the majority's conclusion that the Auditor General is obligated to audit funds appropriated to the court by the legislature and that we may compel him to do so in this proceeding. I concur specially because I believe too little attention has been given to the appearance of impropriety which arises from our participation in this case.

The Auditor General argues that he is denied due

process for two reasons: first, because individual justices of this court have made extrajudicial statements regarding their views on the question of the Auditor General's authority to audit the books of the Attorney Registration and Disciplinary Commission (Commission) and the Board of Law Examiners (Board); and second, because the court is the real plaintiff in interest here and is thus sitting in judgment of its own lawsuit. The first point is without merit. Not all the current members of the court have taken a position with respect to the Commission and Board funds. Moreover, statements regarding that separate controversy now pending in the circuit court of Cook County are too remote to require disqualification in this case.

The more difficult point is whether the court is in fact sitting in judgment of its own case. In one sense, the people of the State are the real party in interest here: it is they who deserve an accounting of the hundreds of millions of dollars appropriated by the legislature and expended by the court system since the last audit of these funds by the Auditor General. The plaintiff, Mr. Madden, is—in this sense—merely their representative. But we cannot and should not gloss over the realities of the situation. Mr. Madden as Acting Director is an employee of the court, and he serves at our pleasure. We cannot but acknowledge that this action could only be maintained with our approval.

Despite this fact, I agree with the majority that our interest here is not of a magnitude or kind which implicates due process. If the Federal Constitution does not require our disqualification, however, the Standards of Judicial Conduct, under normal circumstances, would. (See 87 Ill. 2d R. 61(c)(4); *cf. Southern Pacific Communications Co. v. American Telephone & Telegraph Co.* (D.C. Cir. 1984), 740 F.2d 980, 990 n.9 (reach of Federal statutes on judicial disqualification broader than due pro-

cess).) Although the audit will not inure to our benefit—either financially or otherwise—apart from the interest we all have as citizens in a proper accounting of public funds, this is still our lawsuit. We cannot escape the fact that Mr. Madden works for us and is under our control. As is evidenced by newspaper editorials dubbing this case "a bout with the referee," there is surely the possibility that the public will perceive something improper is taking place. It is this appearance of impropriety that makes me uncomfortable with hearing this case and would ordinarily require us to step aside.

The difficulty with our recusal here is that it would result in a continuation of the inaction by the Auditor General which has frustrated the manifest constitutional design for an audit of this court's appropriated funds. If we cannot adjudicate the question of the Auditor General's responsibility, it will not be decided, and the Auditor General will continue to leave hundreds of millions of dollars appropriated by the legislature unaudited. Under the ancient "rule of necessity," even if a judge has an interest in the case, "where no provision is made for calling another in, or where no one else can take his place—it is his duty to hear and decide, however disagreeable it may be." (*United States v. Will* (1980), 449 U.S. 200, 214, 66 L. Ed. 2d 392, 405, 101 S. Ct. 471, 480, quoting *Philadelphia v. Fox* (1870), 64 Pa. 169, 185.) This is, in my judgment, such a situation.

Contrary to the Auditor General's suggestion, there is no constitutional authority for us to assign a "temporary acting Supreme Court" which could relieve us of the necessity of deciding this case. Although article VI, section 16, of the 1970 Constitution (Ill. Const. 1970, art. VI, sec. 16) gives us the power to "assign a Judge temporarily to any court," this provision cannot be read in isolation. Article VI, section 3, plainly states that the supreme court "shall consist of seven Judges." If assign-

ment of a "temporary acting Supreme Court" were permissible, we would have 14 judges, not seven. Nothing in either provision suggests that the temporary-assignment authority can be exercised merely to "replace" a judge who has recused himself. As I understand the constitutional scheme, our power to make temporary assignments to this court, the sole court in this State for which the exact number of offices is defined in the Constitution, extends only to filling vacancies in office.

The rule of necessity commands that, while we may wish to avoid doing so, we must decide this case. The public interest—as well as that of the members of the Supreme Court and the Acting Director—in knowing that public funds are being safeguarded requires us to determine whether an audit of funds appropriated by the legislature is indicated. I concur with the majority that the Auditor General has presented no reason why he cannot audit the appropriated funds. He has failed to make any showing of how an audit of the appropriated funds without an audit of the Commission and Board funds would violate accepted accounting principles. Nor can the Auditor General dispute that he currently conducts what he must characterize as "fragmentary or selective" audits by continuing to audit the moneys appropriated for the appellate court, which are a part of the overall legislative appropriation to this court. And, as pointed out by the majority, for several years he did audit the funds appropriated by the legislature to the Supreme Court without auditing the Commission and Board funds. I, therefore, agree that the writ of *mandamus* should issue.