THE CHICAGO BAR ASSOCIATION *et al.*, Plaintiffs and Counterdefendants-Appellees, v. ROBERT G. CRONSON, Auditor General of the State of Illinois, Defendant and Counterplaintiff-Appellant.

First District (4th Division)   No. 1—87—2634

Opinion filed May 18, 1989.

712

JIGANTI, P.J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Samuel W. Witwer, Sr., and Samuel W. Witwer, Jr., Special Assistant Attorneys General, of Chicago, of counsel), for appellant.

William J. Harte and David J. Walker, both of William J. Harte, Ltd.,

John F. McCarthy and Richard Phelan, both of McCarthy & Levin, John C. O'Malley and Deborah M. Kennedy, all of Chicago, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Robert G. Cronson, Auditor General of the State of Illinois (the Auditor General), appeals from an order of the circuit court of Cook County determining that the Auditor General has no authority to conduct an audit of the funds of the Attorney Registration and Disciplinary Commission of the Supreme Court of the State of Illinois (the Disciplinary Commission or Commission) or the funds of the State Board of Law Examiners of the Supreme Court of the State of Illinois (the Board of Law Examiners).

We conclude that the Auditor General's audit of the funds of the Disciplinary Commission and the Board of Law Examiners was not envisioned in article VIII of the 1970 Illinois Constitution (Ill. Const. 1970, art. VIII) or in that constitutional provision's statutory codification in the Illinois State Auditing Act (Act) (Ill. Rev. Stat. 1987, ch. 15, par. 301—1 *et seq.*). We further determine that the Auditor General's audit of the funds of the Disciplinary Commission and the Board of Law Examiners, with report of said audit to the General Assembly and the Governor, would violate the separation of powers clause of the 1970 Illinois Constitution. (Ill. Const. 1970, art. II, §1.) We also conclude that no genuine issues of material fact appeared in the record to prevent summary judgment. Consequently, we affirm the trial court's order.

The instant cause was initiated when the Chicago Bar Association (the CBA), a not-for-profit association composed primarily of Illinois attorneys who practice law in the Chicago area, and other plaintiffs who had paid a fee to either the Board of Law Examiners or the Disciplinary Commission, filed a complaint for declaratory and other relief against the Auditor General, the Disciplinary Commission, and the Board of Law Examiners. In this complaint, the CBA sought a declaration that the Illinois Constitution and applicable statutes do not authorize the Auditor General to audit the funds of the Disciplinary Commission or the Board of Law Examiners. The trial court realigned the Disciplinary Commission and the Board of Law Examiners as plaintiffs in the CBA suit. Thereafter, the Disciplinary Commission and the Board of Law Examiners filed a complaint similar to that filed by the CBA.

The Auditor General answered the complaints and filed a counterclaim against the CBA, the Disciplinary Commission, and the Board

of Law Examiners. This counterclaim sought a declaration that the Auditor General does possess the authority, pursuant to the 1970 Illinois Constitution and applicable statutes, to conduct audits of the funds of the Disciplinary Commission and the Board of Law Examiners. Parties filed appropriate responses or replies to these pleadings. Following discovery, the CBA, the Disciplinary Commission, the Board of Law Examiners, and the Auditor General all filed cross-motions for summary judgment. The following stands undisputed in the record.

The Auditor General has sought to perform an audit of the receipt and use of the funds administered by the Disciplinary Commission and the Board of Law Examiners since 1977. It is the Auditor General's position that these entities are State agencies, that they are each administered by public funds, and that their audit by the Auditor General would not violate separation of power principles provided for in the 1970 Illinois Constitution. The Disciplinary Commission and the Board of Law Examiners have refused audit by the Auditor General on the ground that they are not State agencies administering public funds within the scope of article VIII or the Illinois State Auditing Act, and, pursuant to principles of separation of powers, cannot be audited by the Auditor General.

In 1933, the Illinois Supreme Court commissioned the Board of Governors of the Illinois State Bar Association and the Board of Managers of the CBA to investigate and make such charges of attorney misconduct as may be necessary, pursuant to then Supreme Court Rule 41 (Ill. Rev. Stat. 1933, ch. 110, par. 259). The activities of these bar associations in this regard were funded wholly from the associations' private fees from attorneys who were members of the organizations. The supreme court altered this arrangement in 1973 by the creation of the present Disciplinary Commission pursuant to rules of the Illinois Supreme Court (see 107 Ill. 2d Rules 751 through 774), which asserts the court in its registration of persons licensed to practice law in this State, and in the court's investigation and discipline of misconduct of those attorneys so registered. (See 107 Ill. 2d R. 752.) Members of the Commission, and the Administrator of the Commission, are appointed by the Illinois Supreme Court. (107 Ill. 2d Rules 751, 752.) To fund the Commission's performance of its duties, the Disciplinary Commission collects and administers a disciplinary fund. (107 Ill. 2d R. 751(e)(5).) The only source of this disciplinary fund is a registration fee which must be paid on an annual basis by each attorney admitted to practice law in this State. (107 Ill. 2d R. 756.) The Disciplinary Commission is not funded from any form of State taxation or

revenue, its funds are not appropriated by, authorized by, or otherwise governed by enactments of the Illinois legislature, and the Disciplinary Commission utilizes no State facilities, equipment, property, or supplies. The Disciplinary Commission's funds are also not paid to, or maintained by, the State Treasurer. An independent audit of the funds of the Disciplinary Commission has been·conducted each year by a private accounting firm. (See 107 Ill. 2d R. 751(e)(5).) This audit has been submitted to the Illinois Supreme Court and published each year in the Disciplinary Commission's annual public report. See 107 Ill. 2d R. 751(e)(5).

The Board of Law Examiners was created in 1897 pursuant to rules of the Illinois Supreme Court (168 Ill. R. 39, currently codified at 107 Ill. 2d Rules 701 through 709) to assist the court in its investigation and disposition of applications submitted by persons seeking to be admitted to the Illinois bar. (See 107 Ill. 2d Rules 704, 705, 709.) The Board is composed of individuals appointed by the Illinois Supreme Court. (107 Ill. 2d R. 702.) To fund the Board's performance of its duties, the Board of Law Examiners collects and administers an application fund. (107 Ill. 2d R. 706.) The only source of this fund is an application fee which must be paid by each person seeking to be admitted to the Illinois bar. (107 Ill. 2d R. 702(c).) Similar to the Disciplinary Commission, the Board of Law Examiners is not funded from any form of State taxation or revenue, its funds are not appropriated by, authorized by, or otherwise governed by enactments of the Illinois legislature, and the Board of Law Examiners utilizes no State facilities, equipment, property, or supplies. The accounts of the Board of Law Examiners are also not paid to or maintained by the State Treasurer. The Board of Law Examiners' funds are audited each year by a private accounting firm and reported to the Illinois Supreme Court. (107 Ill. 2d R. 702(d).) Funds collected in excess of the expenses of the Board of Law Examiners are applied "as the Court may from time to time direct." 107 Ill. 2d R. 702(d).

The trial court determined that the Disciplinary Commission and the Board of Law Examiners are not State agencies administering public funds within the scope of the Auditor General's powers found in article VIII of the 1970 Illinois Constitution and the Illinois State Auditing Act. The trial court further determined that the Auditor General's audit of the funds of the Disciplinary Commission and the Board of Law Examiners would violate principles of separation of powers. Based upon these determinations, the trial court entered summary judgment in favor of the CBA, the Disciplinary Commission, and the Board of Law Examiners. The Auditor General's appeal followed.

OPINION

The Auditor General argues that he is an officer of constitutional rank whose powers include the audit of all public funds of this State. The Auditor General maintains that he has the constitutional duty to audit the funds of the Disciplinary Commission and the Board of Law Examiners, because both are State agencies that administer public funds. However, the question presented in this appeal is not simply whether the Board of Law Examiners and the Disciplinary Commission are, in a broad or general sense, State agencies using public funds. Rather, the issue presented here is a more narrow one, *i.e.*, whether the Board of Law Examiners and the Disciplinary Commission are State agencies administering public funds subject to the audit powers of the Auditor General pursuant to article VIII of the 1970 Illinois Constitution and the Illinois State Auditing Act.

Article VIII provides a comprehensive scheme for the control, management, and audit of State finances, to ensure that public funds are used for public purposes and that reports of the use of public funds are made available to citizens of this State. (See, *e.g.*, 7 Report of Proceedings, Sixth Illinois Constitutional Convention 2007 *et seq.* (Report of the Committee of Revenue and Finance) (hereinafter cited as Proceedings).) To achieve these objectives, article VIII first sets out that "[p]ublic funds, property or credit shall be used only for public purposes." (Ill. Const. 1970, art. VIII, §1(a).) It further provides, "The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance." (Ill. Const. 1970, art. VIII, §1(b).) In addition, "[r]eports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law." Ill. Const. 1970, art. VIII, §1(c).

Article VIII accords to the Governor the power to prepare a yearly State budget, "set[ting] forth the estimated balance of funds available for appropriation at the beginning of the fiscal year, the estimated receipts, and a plan for expenditures and obligations during the fiscal year." (Ill. Const. 1970, art. VIII, §2(a).) The Governor "shall *** submit" this budget to the General Assembly. (Ill. Const. 1970, art. VIII, §2(a).) Although the Governor prepares and submits the State budget, it is the General Assembly that must authorize expenditures in accordance with the Governor's proposed budget; thus, article VIII states, "The General Assembly by law shall make appropriations for all expenditures of public funds by the State." Ill. Const. 1970, art. VIII, §2(b); see also Ill. Const. 1970, art. IX, §1.

Article VIII thereafter mandates that the "General Assembly shall provide by law for the audit of the obligation, receipt and use of public funds of the State." (Ill. Const. 1970, art. VIII, §3(a).) It further provides, "The Auditor General shall conduct the audit of public funds of the State. He shall make additional reports and investigations as directed by the General Assembly. He shall report his findings and recommendations to the General Assembly and to the Governor." (Ill. Const. 1970, art. VIII, §3(b).) The 1970 Illinois Constitution gives no definition for the term "public funds."

The Illinois State Auditing Act is designed to "implement[ ] Article VIII, Section 3 of the Constitution, and shall be construed in furtherance of those provisions." (Ill. Rev. Stat. 1987, ch. 15, par. 301–2(a).) The Act "is intended to provide a comprehensive and thorough post audit of the obligation, expenditure, receipt and use of public funds of the State under the direction and control of the Auditor General, to the end that the government of the State of Illinois will be accountable to the General Assembly and the citizens and taxpayers, and to the end that the constitutional and statutory requirements governing state fiscal and financial operations will be enforced." (Ill. Rev. Stat. 1987, ch. 15, par. 301–2(b).) In the furtherance of these objectives, the Act is "intended to govern the Auditor General under the control and direction of the General Assembly" (Ill. Rev. Stat. 1987, ch. 15, par. 301–2(c)) and expressly recognizes the Auditor General as a "legislative officer of the State under the [1970 Illinois] Constitution." Ill. Rev. Stat. 1987, ch. 15, par. 301–2(c).

The Act does not define the term "public funds," and states simply that the phrase "public funds of the State" "has the meaning ascribed to that term in Article VIII of the Constitution." (Ill. Rev. Stat. 1987, ch. 15, par. 301–18.) The Act defines "state agencies" as follows:

> "[A]ll officers, boards, commissions and agencies created by the Constitution, whether in the executive, legislative or judicial branch, but other than the circuit court; all officers, departments, boards, commissions, agencies, institutions, authorities, universities, bodies politic and corporate of the State; and administrative units or corporate outgrowths of the State government which are created by or pursuant to statute, other than units of local government and their officers, school districts and boards of election commissioners; all administrative units and corporate outgrowths of the above and as may be created by executive order of the Governor." Ill. Rev. Stat. 1987, ch. 15, par. 301–7.

The Illinois State Auditing Act states that the "Auditor General has jurisdiction over all State agencies to make post audits and investigations authorized by or under this Act or the Constitution." (Ill. Rev. Stat. 1987, ch. 15, par. 303—1.) A "post audit" or "audit" is "a post facto examination of books, documents, records, and other evidence relating to the obligation, receipt, expenditure or use of public funds of the State, including governmental operations relating to such obligation, receipt, expenditure, or use." (Ill. Rev. Stat. 1987, ch. 15, par. 301—12.) A post audit or audit may be "a financial audit, a management audit or a program audit, *** or some combination thereof." Ill. Rev. Stat. 1987, ch. 15, par. 301—12.

Financial audits are generally designed to determine "whether the audited agency has obligated, expended, received and used public funds of the State in accordance with the purpose for which such funds have been appropriated or otherwise authorized by law." (Ill. Rev. Stat. 1987, ch. 15, par. 301—13(a).) The Auditor General is obligated by the Act to perform a financial audit of each State agency at least once during every biennium. (Ill. Rev. Stat. 1987, ch. 15, par. 303—2.) In conducting these required financial audits, the Auditor General is permitted to "inquire into and report upon matters properly within the scope of a management or program audit." (Ill. Rev. Stat. 1987, ch. 15, par. 303—2.) A management audit determines whether the audited agency is managing or utilizing its funds in an economical and efficient manner. (Ill. Rev. Stat. 1987, ch. 15, par. 301—14.) A program audit determines whether the agency's objectives are being achieved efficiently and effectively through the use of public funds. Ill. Rev. Stat. 1987, ch. 15, par. 301—15.

Upon completion of an audit, the Auditor General "shall submit a copy of each audit report to the [Legislative Audit] Commission, the Governor, the Speaker and minority leader of the House of Representatives and the President and minority leader of the Senate." (Ill. Rev. Stat. 1987, ch. 15, par. 303—14.) The Auditor General must also submit quarterly reports of his activities to the Legislative Audit Commission, and annual reports summarizing all audits, investigations and special studies to the Legislative Audit Commission, the General Assembly, and the Governor. Ill. Rev. Stat. 1987, ch. 15, par. 303—15.

In order to determine the scope of article VIII and the Illinois State Auditing Act with respect to the Auditor General's power to audit the funds of the Board of Law Examiners and the Disciplinary Commission, we must ascertain the plain and ordinary meaning of article VIII and the Illinois State Auditing Act in the constitutional and legislative contexts in which they appear. See, *e.g.*, *United Citi-*

*zens v. Coalition to Let the People Decide in 1989* (1988), 125 Ill. 2d 332, 338-39, 531 N.E.2d 802.

■ When the powers and duties of the Auditor General are placed in the constitutional and legislative scheme whereby the legislative post of Auditor General is created, the powers of the position are defined, and the branches of State government to which the Auditor General must report are specified, it is readily apparent that the role of the Auditor General is to conduct audits with respect to all funds appropriated or otherwise authorized by the General Assembly following the Governor's preparation and submission of the State budget. Included in the scope of the Auditor General's jurisdiction are those public funds, appropriated or otherwise authorized by legislative enactment, that are in the care of State agencies created by the Illinois Constitution, by legislative enactment, or by executive order, including those funds appropriated by the General Assembly to the Illinois Supreme Court. See *Madden v. Cronson* (1986), 114 Ill. 2d 504, 501 N.E.2d 1267.

Because the Auditor General must audit funds appropriated or otherwise authorized by the General Assembly after preparation and submission of the Governor's budget, especially when those funds are expended by agencies created in the Illinois Constitution, State statute, or executive order, the Auditor General must report his findings to the General Assembly and the Governor. (See 2 Proceedings 889, 890, 914 (remarks of Delegate Brannen); 2 Proceedings 916 (remarks of Delegate Coleman); 2 Proceedings 918 (remarks of Delegate Elward); 2 Proceedings 913, 919 (remarks of Vice-President Smith); 5 Proceedings 4215, 4254, 4471 (remarks of Delegate Durr); 5 Proceedings 4214 (remarks of Delegate Mullen); 5 Proceedings 4217 (remarks of Delegate Coleman); 7 Proceedings 2037 (Committee Report).) As stated at the Sixth Illinois Constitutional Convention, "The purpose of the postaudit section is to fix responsibility in the legislature to follow up to see that the appropriations which they pass are in fact used for the purposes which they intended in the passage of the appropriation bills." 2 Proceedings 889 (remarks of Delegate Brannen).

■ However, the funds of the Disciplinary Commission and the Board of Law Examiners are not appropriated or otherwise authorized by laws enacted by the General Assembly, nor are they provided for in the annual budget of the Governor. The Disciplinary Commission and the Board of Law Examiners receive no funds by legislative appropriation or authorization, and do not depend upon a legislative or executive grant of authority to collect or administer their application or disciplinary fees. Neither the 1970 Illinois Constitution, stat-

utes adopted by the General Assembly, nor executive order of the Governor, set forth the powers, structures, or policies of the Disciplinary Commission or the Board of Law Examiners. The functions of the Disciplinary Commission and the Board of Law Examiners fall within the inherent, exclusive, constitutional powers of the Illinois Supreme Court. (See Ill. Const. 1970, art. VI, §§1, 16; *People ex rel. Brazen v. Finley* (1988), 119 Ill. 2d 485, 492-93, 519 N.E.2d 898; *In re Loss* (1987), 119 Ill. 2d 186, 518 N.E.2d 981; *In re Application of Day* (1899), 181 Ill. 73, 54 N.E. 646.) Both the Disciplinary Commission and the Board of Law Examiners are created by Illinois Supreme Court rules adopted pursuant to the supreme court's inherent, exclusive constitutional authority. In addition, the duties, structure, and authority to collect and administer funds of the Board of Law Examiners and the Disciplinary Commission derive exclusively from rules of the Illinois Supreme Court. Thus the Disciplinary Commission and the Board of Law Examiners do not fall within the scope of the audit scheme of article VIII or the Illinois State Auditing Act.

■ The Auditor General argues that the Disciplinary Commission and the Board of Law Examiners fall within the scope of the term "state agency" as defined in the Illinois State Auditing Act. As noted previously, the Act defines "state agency" as follows:

"[A]ll officers, boards, commissions and agencies created by the Constitution, whether in the executive, legislative or judicial branch, but other than the circuit court; all officers, departments, boards, commissions, agencies, institutions, authorities, universities, bodies politic and corporate of the State; and administrative units or corporate outgrowths of the State government which are created by or pursuant to statute, other than units of local government and their officers, school districts and boards of election commissioners; all administrative units and corporate outgrowths of the above and as may be created by executive order of the Governor." Ill. Rev. Stat. 1987, ch. 15, par. 301—7.

In our view, the plain language of the definition of "state agency" in the Illinois State Auditing Act does not include the Disciplinary Commission or the Board of Law Examiners. The definition of "state agency" contains the general categories of agencies created by the Constitution and agencies created by statute or executive order. Neither the Disciplinary Commission nor the Board of Law Examiners is "created by the Constitution," nor is either "created by or pursuant to statute" or "created by executive order."

The Auditor General also asserts that the Illinois Supreme Court

is a "state agency" under the Illinois State Auditing Act because the supreme court is created by and in the Illinois Constitution. The Auditor General further notes that the Disciplinary Commission and the Board of Law Examiners are created by the Illinois Supreme Court pursuant to the court's grant of constitutional authority to perform the public purpose of regulating the admission and practice of law in this State. Based on these observations, the Auditor General concludes that the Disciplinary Commission and Board of Law Examiners should also be State agencies. The Auditor General contends that this interpretation would be consistent with the intent of the drafters of article VIII and the Illinois State Auditing Act that the Board of Law Examiners and the Disciplinary Commission be subject to his audit powers.

■ It is axiomatic that in discerning the drafters' intent with respect to article VIII of the 1970 Constitution and the Illinois State Auditing Act, we must consider the objectives the drafters sought to achieve. (See, *e.g.*, *McCastle v. Sheinkop* (1987), 121 Ill. 2d 188, 193, 520 N.E.2d 293.) The purpose of the Auditor General's audit of public funds is to ensure that agencies entrusted with those funds will be accountable to the branch of State government that has authorized the agency's receipt, obligation, and use of public funds, and to the branch of State government that is capable of rectifying any irregularity in that agency's malfeasance or nonfeasance with respect to those funds. (See, *e.g.*, 2 Proceedings 913 (remarks of Vice-President Smith); 2 Proceedings 914 (remarks of Delegate Brannen); 5 Proceedings 4214 (remarks of Delegate Mullen); 5 Proceedings 4217 (remarks of Delegate Coleman); 5 Proceedings 4215, 4254, 4471 (remarks of Delegate Durr).) However, neither the General Assembly nor the Governor possesses the constitutional or statutory authority to alter, modify, or in any manner affect the duties, powers, composition, structure, or operation of the Board of Law Examiners or the Disciplinary Commission. In addition, neither the Illinois legislature nor the Governor has the authority to regulate the admission or practice of law in this State. Consequently, we determine that the drafters of article VIII of the 1970 Illinois Constitution and the Illinois State Auditing Act did not contemplate the Auditor General's audit of the funds of the Disciplinary Commission and the Board of Law Examiners, with report of his audit to the General Assembly and the Governor.

The Auditor General also maintains that his audit of the accounts of the Board of Law Examiners and the Disciplinary Commission is necessary to ensure that both entities are fully accountable to the public regarding their receipt, obligation, and use of their admission

and disciplinary funds. In this regard the Auditor General argues that the term "public funds of the State" must be given the same meaning in both section 1 of article VIII (regarding public report of use of public funds) and in section 3 of article VIII (regarding audit of public funds by Auditor General). The Auditor General contends that if the funds of the Board of Law Examiners and the Disciplinary Commission are not "public funds of the State" subject to the Auditor General's authority under section 3, then their funds are not governed by section 1 regarding public report of the use of public funds. The Auditor General maintains that a failure to require the public disclosure of the use of the funds of the Board of Law Examiners and the Disciplinary Commission, under section 1, would contradict the clear intent of the drafters of article VIII that "public funds of the State" include "the broadest possible concept of the use of public funds." (5 Proceedings 4218 (remarks of Delegate Whalen); see also 2 Proceedings 878 (remarks of Delegate Netsch to the effect that the term "public funds of the State" in draft section 2 of article VIII, eventually renumbered to section 1(c) in the 1970 Illinois Constitution, intended to include use of public funds by judicial and legislative branches).) However, the question presented in the instant cause is not whether the funds of the Board of Law Examiners and the Disciplinary Commission fall within the scope of section 1 of article VIII, and we therefore do not resolve that question herein. Furthermore, because Illinois Supreme Court rules require public report of the use and audit of the funds of the Board of Law Examiners and the Disciplinary Commission, the nondisclosure which the Auditor General fears does not arise.

■ The Auditor General maintains that because he audits the collection and administration of license fees of approximately 70 other professions or occupations (such as physicians, nurses, accountants, veterinarians, etc.), he should also audit the collection and administration of the admission and disciplinary fees collected by the Board of Law Examiners and the Disciplinary Commission. The professional and occupation fees audited by the Auditor General are collected and administered by agencies created by the General Assembly, not the Illinois Supreme Court. (See, *e.g.*, Ill. Rev. Stat. 1987, ch. 111, pars. 1201 through 1236 (architects), 1701—1 through 1704—22 (barbers), 5801 through 5835 (real estate brokers).) Also, the agencies that collect and administer these professional or occupation fees expend funds that are included in the Governor's proposed budget, appropriated or authorized by the Illinois legislature, and deposited into the State Treasury in accordance with laws enacted by the General Assembly. (See, *e.g.*, Ill. Rev. Stat. 1987, ch. 130, par. 7.) As a result,

the professional or occupation fees referred to by the Auditor General are significantly distinguishable from the admission and disciplinary funds of the Board of Law Examiners and the Disciplinary Commission.

The Auditor General also notes that he audits substantial sums of nonappropriated monies which need not be immediately submitted to the State Treasury. The Auditor General asserts that these nonappropriated funds are substantially similar to the admission and disciplinary funds collected and administered by the Board of Law Examiners and the Disciplinary Commission. The nonappropriated funds to which the Auditor General refers have been authorized by the General Assembly pursuant to statute and legislative enactment determines whether or when the funds must be paid over to the State Treasurer. (See, e.g., Ill. Rev. Stat. 1987, ch. 127, par. 167.02; see also, e.g., Ill. Rev. Stat. 1987, ch. 108½, pars. 14—101 through 14—151 (Illinois State Employees Retirement System); Ill. Rev. Stat. 1987, ch. 121, pars. 100—1 through 100—35 (Illinois State Toll Highway Authority); Ill. Rev. Stat. 1987, ch. 67½, pars. 301 through 334 (Illinois Housing Development Authority).) Thus the nonappropriated funds, unlike the admission and disciplinary funds of the Board of Law Examiners and the Disciplinary Commission, depend upon a legislative grant of authority for their existence. Also, these nonappropriated funds are held by agencies created by legislative enactment.

■ The Auditor General also argues that his audit of the funds of the Disciplinary Commission and the Board of Law Examiners, with report of this audit to the General Assembly and the Governor, would not violate the principles of the separation of powers. The 1970 Illinois Constitution states that the "legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.) "[I]f a 'power is judicial in character, the legislature is *expressly prohibited* from exercising it.' [Citations.]" (Emphasis in original.) (*People v. Joseph* (1986), 113 Ill. 2d 36, 41, 495 N.E.2d 501.) The common law has long recognized that the admission and regulation of the practice of law in this State is an exclusive function of the Illinois Supreme Court and is within the scope of the supreme court's inherent "judicial power." (See, e.g., *People ex rel. Brazen v. Finley* (1988), 119 Ill. 2d 485, 492-93, 519 N.E.2d 898; *In re Application of Day* (1899), 181 Ill. 73, 54 N.E. 646.) This inherent judicial power includes the authority to compel the collection of the admission and disciplinary fees provided for in Illinois Supreme Court rules. (See *Sharood v. Hatfield* (1973), 296 Minn. 416, 210 N.W.2d 275.) We note that the Auditor General has

not challenged the power of the Illinois Supreme Court to create the Board of Law Examiners or the Disciplinary Commission, or to authorize their collection of admission or disciplinary funds.

■■ Because the Board of Law Examiners and the Disciplinary Commission are creatures of Illinois Supreme Court rule, and because their collection and administration of funds derive exclusively from a judicial grant of authority from the Illinois Supreme Court, it is for the Illinois Supreme Court, not the General Assembly or the Governor, to determine whether the Disciplinary Commission or the Board of Law Examiners has properly discharged the responsibilities delegated to them by the Illinois Supreme Court and to determine whether the Board of Law Examiners or the Disciplinary Commission has utilized its funds according to the particularized purposes for which each was created by the Illinois Supreme Court. Since the Board of Law Examiners and the Disciplinary Commission are created by supreme court rule, collect their funds solely by virtue of a judicial grant of power, and administer matters within the inherent, exclusive authority of the Illinois Supreme Court, audit of the funds of the Board of Law Examiners and the Disciplinary Commission by the Auditor General would work more than a mere peripheral effect on the court's exercise of its inherent judicial power to regulate the admission and practice of law in this State. (See *Joseph*, 113 Ill. 2d at 43.) The Auditor General's duties include the performance of financial audits, management audits, program audits, investigations, and special studies, either on the initiative of the Auditor General, or upon the direction of the Legislative Audit Commission or the General Assembly. (See Ill. Rev. Stat. 1987, ch. 15, pars. 303—2 through 303—5.) Reports of any audit, investigation or study must be made to the General Assembly, which may authorize further audit, investigation, or study if deemed appropriate by either the General Assembly or the Legislative Audit Commission. (See Ill. Rev. Stat. 1987, ch. 15, pars. 303—2 through 303—5.) Each of these audits, with resulting report and the possibility of remedial recommendations or further investigation by the General Assembly, the legislative Audit Commission, or the Governor, would be highly intrusive into the court's inherent power to regulate the manner in which the Board and the Commission are structured, in which they function, and in which they obligate and use their funds.

■■ The Auditor General suggests that he has agreed to perform no more than a financial audit of the funds of the Board of Law Examiners and the Disciplinary Commission. The Auditor General asserts that this agreement to limit the scope of his audits will obviate

any potential encroachment into the supreme court's inherent judicial power to regulate the admission and practice of law in this State. Even a limited financial audit must be submitted to both the General Assembly and the Governor. (See Ill. Rev. Stat. 1987, ch. 15, par. 303—14.) Furthermore, the Auditor General's powers under the 1970 Illinois Constitution and the Illinois State Auditing Act include not only financial audits, but also management and program audits, as well as investigations and special studies directed by the General Assembly or the Legislative Audit Commission. (See Ill. Rev. Stat. 1987, ch. 15, pars. 303—2 through 303—5.) We cannot sanction the Auditor General's partial derogation of this constitutional and statutory mandate, nor can the Auditor General agree to act in contravention to the very grant of his constitutional and statutory authority. *Cf. Madden v. Cronson* (1986), 114 Ill. 2d 504, 501 N.E.2d 1267.

The cases relied upon by the Auditor General support our conclusion that the Auditor General is not granted the authority, under the 1970 Illinois Constitution or the Illinois State Auditing Act, to audit the funds of the Board of Law Examiners or the Disciplinary Commission. In each Illinois Supreme Court decision relied upon by the Auditor General, public funds or assets were administered by agencies created by the Illinois Constitution, the General Assembly, or the Governor, and actions taken with respect to the public funds or assets were authorized by legislative enactment. (See *Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73; *Fergus v. Brady* (1917), 277 Ill. 272, 115 N.E. 393; *Board of Trade v. Cowen* (1911), 252 Ill. 554, 96 N.E. 1084; see also Ill. Rev. Stat. 1987, ch. 85, par. 901 *et seq.*) Our decision is also in accord with similar cases from other jurisdictions. (See *In re Washington State Bar Association* (1976), 86 Wash. 2d 624, 548 P.2d 310; *Ex parte Auditor of Public Accounts* (Ky. 1980), 609 S.W.2d 682; see also *State Licensing Board of Contractors v. State Civil Service Comm'n* (La. App. 1959), 110 So. 2d 847, *aff'd*, 240 La. 231, 123 So. 2d 76.) The decision of *Attorney Registration & Disciplinary Comm'n v. Harris* (N.D. Ill. 1984), 595 F. Supp. 107, is also consistent with the result we reach herein, since the court ruled in that case that the Disciplinary Commission is not a "state agency" whose members and employees are entitled to social security coverage.

■ The Auditor General also contends, in the alternative, that the trial court should have denied the motion for summary judgment of the CBA, the Board of Law Examiners, and the Disciplinary Commission, because the record reveals genuine issues of material fact. We have reviewed the record, but find no material factual disputes between the parties. Accordingly, we find no error in the trial court's

allowance of the motion for summary judgment submitted by the CBA, the Board of Law Examiners, and the Disciplinary Commission. (See, *e.g., D.B. Corkey Co. v. Koplin* (1988), 176 Ill. App. 3d 1096, 531 N.E.2d 1044.) This conclusion is not altered upon consideration of the exhibits excluded by the trial court, assuming solely for the purpose of analysis that those exhibits should not have been excluded.

In summary, when the powers of the Auditor General are placed in the constitutional and legislative scheme whereby the legislative post of Auditor General is created, the powers of the position are defined, and the branches of State government to which the Auditor General must report are specified, it is readily apparent that the role of the Auditor General is to conduct audits with respect to all funds appropriated or otherwise authorized by the General Assembly following the Governor's preparation and submission of the State budget. The functions of the Disciplinary Commission and the Board of Law Examiners fall within the inherent, exclusive, constitutional powers of the Illinois Supreme Court. Both the Disciplinary Commission and the Board of Law Examiners are created by Illinois Supreme Court rules adopted pursuant to the supreme court's inherent, exclusive constitutional authority. In addition, the duties, structure, and authority to collect and administer funds of the Board of Law Examiners and the Disciplinary Commission derive exclusively from rules of the Illinois Supreme Court.

In light of these considerations, we determine that article VIII of the 1970 Illinois Constitution and the Illinois State Auditing Act do not contemplate the Auditor General's audit of the funds of the Disciplinary Commission and the Board of Law Examiners, with report of his audit to the General Assembly and the Governor. We further conclude that principles of separation of powers preclude the Auditor General's audit of the funds of the Board of Law Examiners and the Disciplinary Commission.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

The Illinois Constitution mandates that the Auditor General of Illinois audit "public funds." (Ill. Const. 1970, art. VIII, §3.) A plain reading of the constitutional audit provisions leads to the conclusion

that the funds of the Attorney Registration and Disciplinary Commission and the Board of Examiners are public funds. The report of the Committee on Revenue and Finance of the Illinois Constitutional Convention removes whatever doubt remains as to whether these funds are public funds. The report states that the objective of article VIII is "to assure that the Illinois citizen has the broadest possible access to information on the fiscal condition and operations of state and local governments, so that he may hold his elected officials accountable for their performance in office." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2007 (Report of the Committee on Revenue and Finance).) The Illinois legislature used similar language, which will be discussed subsequently, in enacting the Illinois State Auditing Act (Ill. Rev. Stat. 1987, ch. 15, par. 301—2(b)).

The general focus of this appeal is article VIII of the Constitution, entitled "Finance." (Ill. Const. 1970, art. VIII.) More specifically, it concerns the interpretation of the words "public funds." That term is found in all four sections of article VIII. The pertinent provisions are:

"§1. General Provisions

(a) *Public funds*, property or credit shall be used only for public purposes.

(b) The State, units of local government and school districts shall incur obligations for payment or make payments from *public funds* only as authorized by law or ordinance.

\* \* \*

§2. State Finance

(a) The Governor shall prepare and submit to the General Assembly, at a time prescribed by law, a State budget for the ensuing fiscal year. The budget shall set forth the estimated balance of funds available for appropriation at the beginning of the fiscal year, the estimated receipts, and a plan for expenditures and obligations during the fiscal year of every department, authority, public corporation and quasi-public corporation of the State, every State college and university, and every other public agency created by the State, but not of units of local government or school districts. The budget shall also set forth the indebtedness and contingent liabilities of the State and such other information as may be required by law. Proposed expenditures shall not exceed funds estimated to be available for the fiscal year as shown in the budget.

(b) The General Assembly by law shall make appropriations for all expenditures of *public funds* by the State. Appropriations for a fiscal year shall not exceed funds estimated by the

General Assembly to be available during that year.

§3. State Audit and Auditor General

(a) The General Assembly shall provide by law for the audit of the obligation, receipt and use of *public funds* of the State. The General Assembly, by a vote of three-fifths of the numbers elected to each house, shall appoint an Auditor General and may remove him for cause by a similar vote. \*\*\*

(b) The Auditor General shall conduct the audit of *public funds* of the State. He shall make additional reports and investigations as directed by the General Assembly. He shall report his findings and recommendations to the General Assembly and to the Governor.

§4. Systems of Accounting, Auditing and Reporting

The General Assembly by law shall provide systems of accounting, auditing and reporting of the obligation, receipt and use of *public funds*. These systems shall be used by all units of local government and school district." (Emphasis added.) Ill. Const. 1970, art. VIII.

As mandated by the Constitution, the General Assembly appointed an Auditor General and enacted the Illinois State Auditing Act (Ill. Rev. Stat. 1985, ch. 15, par. 301—1 *et seq.*). Section 1—2(a) of the Act specifically states that the Act implements article VIII, section 3, of the Constitution and should be construed in furtherance of those provisions. (Ill. Rev. Stat. 1985, ch. 15, par. 301—2(a).) Section 1—2(b) states that the Act is "intended to provide a comprehensive and thorough post audit of the obligation, expenditure, receipt and use of public funds of the State \*\*\* to the end that the government of the State of Illinois will be accountable to the General Assembly and the citizens and taxpayers, and to the end that the constitutional and statutory requirements governing state fiscal and financial operations will be enforced." (Ill. Rev. Stat. 1985, ch. 15, par. 301—2(b).) Section 3—1 states that "[t]he Auditor General has jurisdiction over all State agencies to make post audits and investigations authorized by or under this Act or the Constitution." Ill. Rev. Stat. 1985, ch. 15, par. 303—1.

The plaintiffs make four arguments in opposing the asserted power of the Illinois Auditor General to audit the funds of the Board of Bar Examiners and the Attorney Registration and Disciplinary Commission. The plaintiffs first argue that the funds of the Board and the Commission are not public funds of the State because they arise from the inherent power of the supreme court to license and discipline attorneys and not from the Constitution. Second, they argue

that the funds of these two agencies do not comport with the definition of public funds as stated in article VIII of the Constitution. Third, the parties argue that even if the Illinois Constitution gives the legislature power to allow the Auditor General to audit the funds of the Board and Commission, the wording of the Illinois State Auditing Act as enacted by the legislature does not encompass these two agencies. Finally, it is argued that the Act as applied to these agencies violates the constitutional doctrine of separation of powers.

The plaintiffs' first argument stems from the proposition that the supreme court has inherent authority to regulate the admission of attorneys to the bar and to discipline attorneys. Consequently, the legislature must defer to the judiciary in the exercise of its inherent power. (*People v. Joseph* (1986), 113 Ill. 2d 36, 495 N.E.2d 501; see also *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 394 N.E.2d 1157.) The fact that the registration and discipline of attorneys is a power inherent in the judiciary is beyond cavil. However, it is a *non sequitur* to say that because such inherent power exists, the legislature may not enact legislation in the same area. The legislature is prohibited from doing so only if its legislation unduly encroaches upon the inherent powers of the court. *People v. Joseph* (1986), 113 Ill. 2d 36, 47, 495 N.E.2d 501; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149, 105 N.E.2d 713.

The parties in this proceeding do not make any argument that an audit will intrude upon the inherent powers of the court. The majority nevertheless comments that an audit by the Auditor General "would work more than a mere peripheral effect on the court's exercise of its inherent judicial power to regulate the admission and practice of law in this State." (183 Ill. App. 3d at 724.) Similarly, the majority suggests that the audits "would be highly intrusive into the court's inherent power." (183 Ill. App. 3d at 724.) To gain some perspective on the issue of legislative intrusion into the inherent powers of the court, it must be remembered that under article VIII of the Constitution the Auditor General is commanded to audit public funds of the State. Pursuant to this constitutional mandate, the Illinois Supreme Court in the case of *Madden v. Cronson* (1986), 114 Ill. 2d 504, 501 N.E.2d 1267, *cert. denied* (1987), 484 U.S. 818, 98 L. Ed. 2d 36, 108 S. Ct. 73, issued a *mandamus* to the Auditor General commanding that he audit the funds of the supreme court itself. Without a claim by the supreme court that an audit of its own funds is intrusive and without an argument made by the parties in this case that an audit is intrusive, I fail to see how the majority can hold that an audit would be highly intrusive into the court's exercise of its inherent power. Consequently, I do

not believe the inherent power doctrine is a limitation on the power or duty of the Auditor General.

The second argument is that the funds of the Board and the Commission are not public funds as defined by article VIII of the Constitution. The majority holds that public funds are those that are appropriated or otherwise authorized by legislative enactment or by executive order. I believe that holding is based upon a misreading of article VIII and places undue emphasis on section 2 of article VIII, which is entitled "State Finance." That section establishes the Governor's authority and responsibility for submitting a comprehensive budget and also in submitting a balanced budget. (Ill. Ann. Stat., 1970 Const., art. VIII, §2(a), Constitutional Commentary, at 138 (Smith-Hurd 1971).) Section 2 also provides at subsection (b) that the General Assembly shall make appropriations of all expenditures of public funds. I do not believe that section 2 can be properly interpreted as restricting other provisions in article VIII to a definition that public funds are only those appropriated or otherwise authorized by legislative enactment or by executive order.

The section concerning State finance is only one of four sections contained in article VIII. The other three sections clearly evince a scheme, as stated by the committee of the Constitutional Convention that drafted the article, to assure Illinois citizens the broadest possible access to information of the operations of not only the State but also of local governments so that the citizens can hold elected officials accountable for their performance in office. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2007 (Report of the Committee on Revenue and Finance).) For example, section 1(a) of article VIII provides that public funds, without qualification, shall be used only for public purposes. Section 1(b) is equally expansive in stating that "[t]he State, units of local government and school districts" shall incur obligations or make payments from public funds as authorized by law or ordinance. (Ill. Const. 1970, art. VIII, §1(b).) As explained by Robert A. Helman and Wayne W. Whalen in the Constitutional Commentary to section 1(b), the use of the terms "State, units of local government and school districts" is intended to cover all entities of State and local government. (Ill. Ann. Stat., 1970 Const., art. VIII, §1(b), Constitutional Commentary, at 127 (Smith-Hurd 1971).) Section 3(b), in considering all governments, provides for the audit by the Auditor General of State funds. Section 4 provides that the General Assembly shall provide auditing systems for the remainder of the government, that is, units of local government and school districts.

In my view, the term "public funds" must be considered in light

of the intention of the Constitution to encompass all government in the State of Illinois, as expressed in article VIII considered as a whole. It must also be considered in light of the report of the Committee on Finance, quoted above, which states the obvious rationale of article VIII. The Auditor General has the right and the duty to audit funds of the Board and the Commission, which are entities created by the supreme court. The right of the Auditor General to audit the funds in question is not limited by the existence of the inherent power of the supreme court because it is not asserted in any way that the right to audit infringes upon the exercise of this inherent power. It is for these reasons that I would conclude that the Constitution commands that the funds of these two agencies be audited by the Auditor General.

The plaintiffs' third argument is that the Illinois State Auditing Act, as enacted by the legislature, does not encompass the funds of the Commission or the Board. The Act, designed to implement the constitutional audit provisions, defines "State agencies" as follows:

"[A]ll officers, boards, commissions and agencies created by the Constitution, whether in the executive, legislative or judicial branch, but other than the circuit court; all officers, departments, boards, commissions, agencies, institutions, authorities, universities, bodies politic and corporate of the State; and administrative units or corporate outgrowths of the State government which are created by or pursuant to statute, other than units of local government and their officers, school districts and boards of election commissioners; all administrative units and corporate outgrowths of the above and as may be created by executive order of the Governor." (Ill. Rev. Stat. 1987, ch. 15, par. 301—7.)

The comprehensive sweep of this definition is striking. It leaves no doubt that all agencies of State government are subject to audit by the Auditor General. The supreme court itself is clearly encompassed by this definition as an agency or institution of State government. As such, the court receives appropriated funds subject to public audit. (See *Madden v. Cronson* (1986), 114 Ill. 2d 504, 512, 501 N.E.2d 1267, *cert. denied* (1987), 484 U.S. 818, 98 L. Ed. 2d 36, 108 S. Ct. 73.) The Board and Commission, as "administrative units" of the court, are also State agencies within the purview of this definition. If the supreme court itself can be audited, under what rationale can one of its own agencies claim exemption from audit? The funds in question here are committed by supreme court rule to the public purpose of regulating the State bar. Thus, the Board and Commission are State agencies

administering public funds.

The final argument made by the plaintiffs involves the constitutional doctrine of separation of powers. It is the Constitution itself which gives the Auditor General the power to audit all public funds of the State regardless of the particular branch of government which holds them. I do not believe it can be said that the Auditor General, by fulfilling his constitutional mandate, is violating that same Constitution.

For the foregoing reasons, I respectfully dissent from the opinion of the majority.