**Alfred H. GREENING, Jr., Plaintiff,**

v.

**Hon. Thomas J. MORAN, et al., Defendants.**

No. 90–3071.

United States District Court, C.D. Illinois, Springfield Division.

June 21, 1990.

**1246**

LeGrand L. Malany, Springfield, Ill., for plaintiff.

Charles R. Schmadeke, Asst. Atty. Gen., Springfield, Ill., James J. Grogan, Wendy J. Muchman, Chicago, Ill., William S. Hanley, Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

Why is this case before a federal court?

We can find no good answer to that question.

Accordingly, the case is dismissed.

We visit the pleadings in this case to consider the Defendants' motions to dismiss, each brought pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure; by virtue of this posture, we take each and every one of Plaintiff's allegations to be true, *Lathrop v. Donohue*, 367 U.S. 820, 845, 81 S.Ct. 1826, 1839, 6 L.Ed.2d 1191 (1961).

Yet, even with this benefit of the doubt, Plaintiff is entitled to no relief in this forum.

### Facts

The Plaintiff, Alfred H. Greening, Jr., was admitted to the Bar of Illinois in May 1949, at which time his name was included on the master roll of attorneys which is kept by the Clerk of the Supreme Court of Illinois. His name stayed on the master roll until he became embroiled in the dispute giving rise to both this suit and certain disciplinary actions currently pending before the Attorney Registration and Disciplinary Commission (ARDC).

It all started, apparently, back in 1978, when Greening began fooling around with the state's rules concerning to whom bar registration dues are to be paid. Supreme Court Rule 756(a), Ill.Rev.Stat. ch. 110A, ¶ 756(a), provides that (in general), "every attorney admitted to practice law in this State shall register and pay an annual registration fee to the Commission [i.e. the ARDC] on or before the first day of January." The rule continues that in the event the registration fee is not paid by the first of February, the attorney's name is to be removed from the master roll; moreover, once his name is removed from the master roll the attorney is subject to being held in contempt of court for unauthorized practice of law if he should persist in either practicing law or holding himself out as being authorized to practice law in Illinois. Subsection (e) of the Rule, however, allows a relatively painless redemption for those whose names are stricken from the master roll for no reason other than failure to pay: these attorneys "may be reinstated as a matter of course upon registering and paying the registration fee" in arrears at that time, plus $10 for each month the fee wasn't paid.

In 1978 Greening started testing S.Ct. R. 756 by sending his check not to the ARDC, but instead to either the Supreme Court itself, the Treasurer of the State of Illinois for the use of the Supreme Court, or the Clerk of the Supreme Court. All these checks were accepted and negotiated, and

Greening's name remained on the master roll until 1989. In December of 1988, the registration fee applicable to Greening had been increased by the Supreme Court from $100.00 to $140.00 [1], upon which, to quote from the complaint, "plaintiff determined that the funds being raised [by the registration fees] would not be deposited in the State Treasury by the Clerk as required by law ... and refused to remit any further checks that would be deposited by the [ARDC] to its separate account."

Predictably, the ARDC did not sit idle and abdicate its S.Ct. R. 756 duties; instead, it sent to Greening a notice (received in March 1989) informing him that his name had been removed from the master roll, but that he could pay up to make things right. Greening would have none of that, though—he steadfastly refused to pay, and engaged in a battle by correspondence with the ARDC asserting his right to practice law in Illinois without being registered with the ARDC.

Meantime, the ARDC contacted the chief judge of the state circuit court in Greening's venue (the Seventh Judicial Circuit) and informed him that Greening's name (as well as several other attorneys' names) had been stricken from the master roll. The ARDC also corresponded with Greening, stating its disagreement with his legal analysis on the question of whether he had to pay to practice.

Finally on June 12, 1989, Greening partly relented—he forwarded his registration form to the ARDC, but he still refused to remit the required money; instead, he sent a letter (with copies to each Illinois Supreme Court Justice) setting forth his interpretation of the authorities he had previously cited to the ARDC to support his right not to pay. The letter included the statement that:

I am a licensed attorney and my name appears on the master roll maintained by the Supreme Court Clerk. My name can only be removed from that roll for malconduct. I do not think you can show me any authority which shows the failure to

pay this arbitrary fee into private hands is malconduct.

Greening's actions prompted reactions. ARDC Administrator John C. O'Malley filed a report with the Supreme Court on July 27, 1989, amended on August 2, 1989, which requested that the Court order Greening to show cause why he should not be held in contempt and/or be suspended from practice for not paying the fee, and which noted that Greening had continued to hold himself out as being authorized to practice law even though his name had been stricken from the master roll. On August 7, 1989, in case M.R. 5196, Justice Howard C. Ryan ruled Greening to show cause why he should not be suspended from practice in accordance with the Administrator's report, and which required a response by September 11, 1989.

Greening blinked—well, almost. He sent to the Supreme Court, on September 11 and in response to the rule to show cause, a cashier's check which would cover the entire registration fee then in arrears; the trouble was, he once again made the check payable to the Supreme Court, rather than to the appropriate payee, the ARDC.

The Supreme Court was not amused; on September 27, 1989, it ordered the Clerk to return the cashier's check to Greening, and continued the rule to show cause until October 4, 1989, in order to give Greening "the opportunity to make payment of the registration fee and penalty to the Attorney Registration and Disciplinary Commission."

Greening inexplicably declined to remake his check; instead, according to the complaint, he placed the check "in escrow ... subject only to the control of the Chief Justice as constitutional administrator for the Supreme Court." He also began to contact courts he was then appearing before to inform them of his dispute with the ARDC. He was currently involved with an estate administration before Judge Simon L. Friedman of the Seventh Judicial Circuit; when Judge Friedman was advised of the spat Greening was involved in, Judge Friedman entered an order advising Green-

---

1. Greening contends that this amounted to "a    two million dollar gross revenue increase."

ing that "he was not allowed to practice before [him] until such time as he got his matter with the Attorney Registration and Disciplinary Commission straightened out."

Greening was at that time also a counsel of record in a bankruptcy appeal pending in this Court, *Kurtz v. Scully*, No. 86–3235. He sent letters to this Court, which did not reflect that opposing counsel had been sent copies, and which referred to Greening's ARDC dispute in case M.R. 5916. In response to these *ex parte* letters, this Court entered an order on October 25, 1989, commanding Greening to refrain from any further *ex parte* communications; our order also indicated that our October 25 telephone call to the Clerk of the Supreme Court revealed that Greening was still entitled to practice law in Illinois, and so he was likewise still entitled to practice in our Court by virtue of our Local Rule 1. We ordered Greening, however, to immediately inform this Court in the event that status changed.

Greening's *ex parte* letters to this Court landed him in even more trouble with the ARDC; on December 5, 1989, a letter of inquiry (the first step in a disciplinary proceeding) bearing No. 89–Cl–5116 was mailed to Greening allowing him 14 days to give his side of the story. In response, Greening informed the ARDC that our "ruling" on the *ex parte* letters was currently on appeal.[2]

Greening wasn't finished. His 1990 registration fee was due on January 1, 1990, and on December 29, 1989, Greening mailed in his registration form and a check in the full amount of his 1990 fee—once again, though, he refused to make the check payable to the ARDC, but instead made it to the order of the Clerk of the Supreme Court. And predictably, the ARDC returned the check to Greening along with a note pointing out that S.Ct. R. 756(a) requires payment to the "Commission," not to the Supreme Court; the note also reminded Greening that past due amounts and accrued penalties must also be paid before the 1990 payment could be accepted.

Greening once again placed the check in an escrow account "subject to the control of the Chief Justice as constitutional administrator of the Supreme Court," and he also informed the Supreme Court of the escrow account.

On January 30, 1990, the ARDC sent a second letter of inquiry to Greening; this one was given the number 89–Cl–5186, and concerned Greening's appearance before Judge Friedman on October 20, 1989; the letter questioned the propriety of that appearance in light of Greening's name having been stricken from the master roll back in March of 1989. Greening responded to that letter on March 17.

The ARDC also amended the Administrator's report which had prompted Justice Ryan's rule to show cause in case M.R. 5916; the amended report, filed February 13, 1990, noted Greening's appearance before Judge Friedman, and requested again that Greening be ruled to show cause why he should not be held in indirect contempt for failing to pay his registration fee, and for engaging in the unauthorized practice of law. On May 30, 1990, the Supreme Court continued that rule to show cause once more, and scheduled an evidentiary hearing before Judge J. David Bone of the Seventh Judicial Circuit for June 21, 1990.

Finally, one other item of factual background needs mentioning, because Greening brings it up in his complaint.

Canon 9 of the Illinois Code of Professional Responsibility was amended in 1987 by the Supreme Court to provide that clients' nominal or short-term funds held by attorneys in Illinois are to be placed in interest-bearing trust accounts, and that all interest income from those accounts is to be given to the Lawyers Trust Fund of Illinois (LTF) (previously such funds were to be placed in non-interest-bearing accounts). Disciplinary Rule 9–102(d). The LTF, a private not-for-profit corporation, is then to use that money to assist in providing legal assistance for the poor. Supreme Court Rule 771, Ill.Rev.Stat. ch. 110A, ¶ 771, provides, *inter alia*, that an attor-

---

**2.** Which is true—the only issue in the *Scully* case (which is now closed) that was ever appealed was our order to Greening concerning his *ex parte* communications.

ney's failure to comply with any Disciplinary Rule (presumably including D.R. 9–102(d)) might result in a disciplinary action against that attorney, up to and including the possible sanction of disbarment.

### The Complaint

Greening filed this cause of action on March 19, 1990. His 25 page, 3 count, 138 paragraph complaint—along with an even larger appendix—lays out the above facts, and seeks relief against Chief Justice Moran (both individually and in his official capacity), the chairman and members of the ARDC (both individually and in their capacities with the ARDC), the Lawyers Trust Fund of Illinois (LTF), and the Board of Directors of the LTF (both individually and in their capacities as board members of the LTF). The complaint is premised solely upon alleged violations of Greening's civil rights during the course of the factual background of this suit, and claims jurisdiction through 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

The complaint requests both equitable and compensatory relief from all Defendants. For his damages, Greening requests judgment against the Defendants for violations of his rights to due process of the law (Count II) and to equal protection of the laws (Count III), and seeks $75,000 for harm to his business, $200,000 to compensate for his mental anguish, $500,000 for harm to his reputation, plus exemplary damages, attorney's fees and costs. The injunctive relief requested in Count I includes an order enjoining Justice Moran and the ARDC from prosecuting case M.R. 5916 against Greening to collect the registration fee, an order enjoining those Defendants from either prosecuting any disciplinary action based on Greening's alleged unauthorized practice of law or notifying anyone that Greening is not entitled to practice law in Illinois, an order enjoining Justice Moran from paying the ARDC or any non-judicial officer with funds raised from the annual registration fees, and an order enjoining Justice Moran from directing the activities of the LTF and enjoining the LTF from receiving any funds

under D.R. 9–102(d) or expending any funds so received.

To support all this requested relief, Greening has raised numerous substantive constitutional challenges to the way the Supreme Court runs its business generally and its dealings with Greening in particular. Specifically, Greening complains that:

(1) The Supreme Court's refusal to accept Greening's cashier's checks is a discriminatory deprivation of Greening's property without due process of law, because the ARDC is merely an arm of the Supreme Court, and that Court will eventually get the funds anyway;

(2) The enforcement of S.Ct. R. 756 against Greening deprives him of property without due process of law because that rule is nothing but a revenue-raising device generated by the Supreme Court, which lacks statutory or constitutional authority to raise revenue;

(3) The LTF funding provision established by D.R. 9–102(d)(3) is beyond the judicial power vested in the Supreme Court, and as such attorneys' compliance with the rule results in unlawfully depriving of the owners of the principal the interest earned on the funds, and requiring Greening and other attorneys to comply with the disciplinary rule under threat of disbarment deprives them (the attorneys) of property without due process of law;

(4) By notifying the state courts and others that Greening's name had been removed from the master roll of attorneys authorized to practice in Illinois courts, without first providing Greening with "procedural rights," the Supreme Court *de facto* disbarred Greening while circumventing the usual procedures required before disbarment, thus depriving Greening of his property without due process of law;

(5) That by virtue of the ARDC being an arm of the Supreme Court, and the Supreme Court being final arbiter of disciplinary proceedings prosecuted by the ARDC, Greening has been denied his right to the consideration of an impartial tribunal (Greening also asserts that the

·ARDC is statutorily barred from prosecuting any discplinary action, but instead that role falls solely with the Attorney General);

(6) That by creating the ARDC and adopting the rules governing conduct of attorneys practicing in Illinois courts, and also by serving as final arbiter of all disciplinary matters, the Supreme Court has deprived Greening of his right to due process of law by violating the doctrine of separation of powers, by depriving Greening of his right of appeal, and by depriving Greening of a fair and impartial tribunal;

(7) The constitution of Illinois provides that matters involving relatively small sums (here less than $300) are cognizable only in small claims court, and so the Supreme Court lacks original jurisdiction over this matter and by pursuing it deprives Greening of his property without due process of law;

(8) That the registration fee system of S.Ct. R. 756 establishes the Commissioner of the ARDC as a fee officer within the judicial branch, which is in violation of the Illinois constitution and deprives Greening of his right to due process of the law;

(9) That by creating the LTF funding scheme in D.R. 9–102, and by forcing Illinois lawyers to comply with that rule under threat of disbarment, the Supreme Court, the LTF and the ARDC have conspired to force attorneys to commit conversions and thefts of their clients' funds, and that by requiring Greening, under threat of disbarment, to make his registration fee payable to the ARDC, which would then place the money into a "private account," the Supreme Court and the ARDC have conspired to unlawfully intimidate Greening, in violation of his due process rights, as they likewise have done by continuing to prosecute the three pending disciplinary proceedings against Greening; and finally,

(10) That by refusing Greening's check made payable to the Supreme Court rather than to the ARDC, the Supreme Court and the ARDC violated Greening's right to equal protection of the laws inasmuch as those bodies have, since 1979, accepted similar checks drawn by other attorneys, including LeGrand L. Malany (Greening's lawyer here) and Robert G. Cronson.

Greening has clarified and focused his pleading somewhat in his responses to the Defendants' motions to dismiss. For instance, he expressly states that he is *not* challenging any "final adjudication of Illinois Supreme Court, [nor] [t]he Illinois Supreme Court's authority to regulate the practice of law, [nor] [a]ny investigative proceedings the ARDC of the Supreme Court [sic]." Greening also opines that, in his view, "[f]or purposes of this case, it is irrelevant why payment was not sent with the registration form." Moreover, Greening asserts that his complaint is *not* arguing a due process violation merely for the imposition of the registration fee, but instead that violation occurred when he was "summarily suspend[ed] ... on the grounds that he has not paid;" similarly, Greening "is not alleging that the imposition and collection of the fee took [his] property, but rather the summarily *de facto* suspension constitutes a taking of property (the right to practice law) without due process."

With respect to his claims against the LTF, Greening admits that he currently has no client funds in the LTF pool created by D.R. 9–102, and therefore his claims against the LTF do not assert, "nor is he concerned with the property interest his clients or financial institutions may have in the trust account or in the funds in the trust fund." Instead, Greening contends that he "does not need a property interest in the trust fund interest paid to the LTF. The property interest, which is germane, is [Greening's] property interest in his license to practice law." [3]

### Analysis

It becomes clear just by reading the above summary of Greening's constitution-

---

**3.** Notably, Greening nowhere in the pleadings asserts that he has funds which *should* be in the LTF, but which he has withheld due to his fears that the LTF is improper.

al claims that precious little federal interest is involved here.

The tenor of the complaint—indeed, its primary thrust—is that the funding schemes established by S.Ct. R. 756 and D.R. 9–102 are improper and/or illegal under the Illinois laws and constitution. From that premise Greening attempts to segue into federal constitutional violations. At best, though, these federal constitutional violations either are non-justiciable as turning entirely upon questions of state law, or are subject to a stay pending completion of the state court proceedings; but more realistically, Greening's claims are unripe assertions of abstract constitutional violations, and the complaint seeks nothing short of an advisory opinion on the propriety of the disciplinary and funding schemes discussed in the complaint.[4]

Neither this nor any other federal court, though, can render an advisory opinion— we need a *bona fide* case or controversy, U.S. Const. art. III, § 2; *see Hayburn's Case,* 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1796).

The bottom line of this whole "dispute" is that Greening has obstinately refused to comply with the simple registration requirements set by the Supreme Court and through the ARDC, requirements which

thousands of other attorneys in Illinois comply with annually. We do not know why Greening has decided to take this stand and enter into the lists to do combat with the Supreme Court and the ARDC on this trivial point at this late hour of his law career.[5] We do know, however, that this case does not belong in a federal court.

Indeed, only one of the plethora of issues raised even comes close to a justiciable constitutional claim, and that is that Greening has been *de facto* suspended from the practice of law without any opportunity to defend himself.

### Procedural Due Process Claims

Imagine a hypothetical lawyer, somewhat akin to Greening, who has been practicing law for some 40 years and who, to continue that practice, need only fill out his yearly registration application and pay the fee. Such a lawyer would clearly have a property interest in his law license, and he would maintain that property interest by complying with the administrative requirements established for the annual registration process. *See Reed v. Village of Shorewood,* 704 F.2d 943, 948–49 (7th Cir. 1983). Hence, if that lawyer correctly completed his registration application and sub-

---

4. Because Greening has not asked for any declaratory relief, we make no opinion on the availability of such relief here.

5. Defendant Moran, in his motion to dismiss, raises the possibility that this may just be another in a long line of attempts by the Illinois Auditor General, Robert G. Cronson, to get a peek at the ARDC's books. As previously noted, Cronson is mentioned by name in this complaint as an attorney whose checks, submitted payable to the Supreme Court, have been negotiated for the past decade or so. Additionally, Defendant Moran notes that Greening is the former General Counsel to the Auditor General, and appeared as counsel of record in a previous federal suit filed in this Court, *Cronson v. Clark,* 645 F.Supp. 793 (C.D.Ill.1986), *aff'd,* 810 F.2d 662 (7th Cir.), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 151 (1987). We there summarized the dispute as

> a continuing conflict between the Auditor General and the Supreme Court of Illinois. The problem relates to [Cronson's] state constitutional and statutory authority to conduct financial audits of the [ARDC] and the State

Board of Law Examiners ("Board") as part of the regular audit of the state supreme court. [Cronson] claims that the Illinois Constitution mandates a public audit of [ARDC] and Board funds, and hence, precludes him from auditing only the Court's appropriated funds. The Supreme Court disagrees. Since neither the [ARDC] nor the Board receive funding from the General Assembly, but rather operate on fees collected from Illinois attorneys and bar applicants respectively, the Court maintains that the agencies' financial affairs do not fall within [Cronson's] auditing powers.

645 F.Supp. at 794. *See also id.,* n. 2, citing a then-pending state court suit concerning the same controversy.

The possibility that the Cronson dispute is at the heart of Greening's behavior is intriguing; if this case were allowed to go forward, for instance, the issues as currently framed may make relevant and discoverable much, if not all, of the various Defendants' financial records.

But all this is mere speculation, and the answer to why Greening has manufactured this "controversy" is irrelevant to our determination that it does not belong in our Court.

mitted payment in the proper form to the proper authority, his entitlement to a renewal of his license would be clear, and any arbitrary or capricious deprivation of that entitlement by the licensing body would quite possibly provide fertile ground for federal review.

■ But Greening does not stand in our hypothetical lawyer's shoes, and his claims do not provide fertile ground for our review. For one thing, Greening did not timely submit his registration application for 1989, and when he did submit the application he did not tender the fee; when finally he did tender the fee, it was made payable to the wrong party, even though Greening knew full well the correct payee's identity. Then he did the same thing for the 1990 registration fee. Under these facts, Greening had abandoned (at least temporarily, until he complied with the administrative requirements of the registration process) his property interest in a renewed law license. *See Vaden v. Village of Maywood,* 809 F.2d 361, 366 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987), where the court noted that

> [t]he delay in the issuance of Vaden's 1984 [vendor's] license was the result of the Village's attempt to enforce a state regulation. The Illinois Retailers' Occupation Tax Act required Vaden to obtain a certificate of registration from the Illinois Department of Revenue in order to lawfully engage in the retail sale of tangible personal property. Without the certificate, Vaden had no right to conduct her business. The Village Code Enforcement Director's refusal to issue Vaden a renewed license until she obtained the certificate therefore did not deprive Vaden of any right she may have otherwise had to operate her business.

(Citations omitted).

Similarly, in this case Greening admits that the Supreme Court is fully authorized to regulate the practice of law; one of the most common and acceptable regulatory

acts is requiring the registration of those to be regulated, and collecting a fee to cover the cost of regulation. But Greening waited until June of 1989 before submitting his registration application, *sans* fee, which was due in January, and he only "submitted" the fee in October—but even then he did not make the check payable to the proper party (i.e. he failed to conform to the registration requirements). The striking of Greening's name from the master roll pursuant to S.Ct. R. 756 therefore "did not deprive [Greening] of any right [he] may have otherwise had to [practice law]." *Id.*[6] *See also Easter House v. Felder,* 879 F.2d 1458, 1478 (7th Cir.1989), *vacated on other grounds,* — U.S. ——, 110 S.Ct. 1314, 108 L.Ed.2d 490 (1990) (Easterbrook, J., concurring):

> An adoption agency without the staff required by state law can't operate. Easter House concedes that for an extended period it lacked essential staff. It would be straightforward to hold that in such circumstances the Constitution does not require a hearing before the state may suspend the agency's license and tell other public officials (such as the Chief Judge of the Circuit Court) what it has done. The parties have not made such an argument, so I join the majority's opinion, which assumes that a prior hearing was necessary....

(Citations omitted).

■ Moreover, even if Greening had or has a continuing property interest in the renewal of his license under these circumstances, he has not been deprived of that property without due process of law. It seems crystal clear from the complaint that if Greening would merely re-make his check(s) to be payable to the ARDC, then he could get his license back (that is, aside from the pending disciplinary matters concerning his unauthorized practice of law brought about because of his refusal to pay). The fact that this avenue of relief is open to him takes this case out of the category of those arbitrary deprivations

---

6. Of course, upon the proper completion of the application and payment of the fee, Greening would have had "a legitimate claim of entitle-

ment" to practice law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

lacking due process of law—the redemption provision of S.Ct. R. 756(e) could have been Greening's salvation, but for his own obstinence. *See Thornton v. Barnes,* 890 F.2d 1380 (7th Cir.1989).

In *Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474, 478 (7th Cir. 1974), an Illinois bar applicant sought § 1983 relief due to his propensity for failing the bar exam, but the court would have none of it: "Plaintiff ... had been given five opportunities to write a bar examination which was offered biannually. There is no allegation that in the future, he will be denied the same opportunity.... [R]eexamination provides an adequate means of exposing grading errors.... Given the availability of these alternative procedures, the requested procedures [allowing an applicant to see his examination papers] were not constitutionally required" (citations omitted); *see also Poats v. Givan,* 651 F.2d 495, 497 (7th Cir.1981). Similar reasoning applies here—the availability of the "procedure" of resubmitting his application and check in conformance with the ARDC's note informing Greening of the deficiencies of his first attempts satisfy due process.

Hence each of Greening's procedural due process arguments falls. As summarized above, his *first* ground for relief (that the Supreme Court's refusal of his check made payable to it is an arbitrary deprivation of his rights) has no validity; since the rules were very simple but Greening chose to disregard them anyway, he had no right or entitlement to the Supreme Court accepting his check, and even if his argument is true (that the ARDC is but an arm of the Supreme Court, and thus money given to the ARDC is really money belonging to the Supreme Court), which would make the refusal of his check arbitrary, the simple solution, which fully comports with the due process requirements, would have been for Greening to resubmit the check properly made. His *fourth* ground for relief (concerning his *de facto* disbarment) fails for identical reasons.

## Substantive Due Process and Equal Protection Claims

■ Greening's other due process allegations suffer a similar ignominious fate. Greening's *second* ground for relief (that S.Ct. R. 756 is only a revenue-raising device, which the Supreme Court lacked authority to promulgate), *seventh* ground for relief (that the fee dispute is only a small claims matter, according to the Illinois constitution, and so the Supreme Court lacks original jurisdiction to consider the matter), and *eighth* ground for relief (that S.Ct. R. 756 establishes the Commissioner of the ARDC as a fee officer, in violation of the Illinois constitution), are all purely questions of state law, and have no business in this tribunal. *See Cronson v. Clark,* 810 F.2d 662, 664 (7th Cir.), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 151 (1987). Of course, some legal rights are so clearly decided by state law that deviations from them might amount to arbitrary denials of a citizen's rights, but none of these, cited by Greening, are in this category. No state court has, to this Court's knowledge, decided in Greening's favor any of these three issues, and so it can hardly be said that these are secure principles of state law, the violation of which might amount to deprivations of constitutional rights. *See Cronson,* 810 F.2d at 664; *Cantor v. Supreme Court of Pennsylvania,* 353 F.Supp. 1307, 1316 (E.D.Pa.1973), *aff'd,* 487 F.2d 1394 (3d Cir.1973); *May v. Supreme Court of the State of Colorado,* 508 F.2d 136, 139 (10th Cir.1974), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975). *See also Madden v. Cronson,* 114 Ill.2d 504, 103 Ill.Dec. 729, 501 N.E.2d 1267 (1986), *cert. denied,* 484 U.S. 818, 108 S.Ct. 73, 98 L.Ed.2d 36 (1987); *Chicago Bar Association v. Cronson,* 183 Ill.App.3d 710, 132 Ill.Dec. 17, 539 N.E.2d 327 (1st Dist. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 867, 107 L.Ed.2d 950 (1990).

■ Greening's *tenth* ground for relief breaks from his mold and raises an equal protection claim (that is, that Greening is being treated differently than other attorneys because other attorneys' checks have been accepted although made payable to

the Supreme Court, while Greening's was refused); in addition, several of Greening's due process arguments (and particularly his *second, seventh* and *eighth* grounds for relief) arguably seek relief for violation of Greening's right to substantive due process. We have touched upon these substantive due process claims in the preceding paragraph. Moreover, as Defendant Moran has noted, inasmuch as Greening has not alleged that he belongs to a suspect class, nor alleged the deprivation of a fundamental right, the proper judicial analysis of the challenged statutes calls for application of the rational relationship standard; i.e. the challenged law or classification will only be found unconstitutional if it does not even bear a rational relationship to a legitimate end of government. *See Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981).

In this case, Greening expressly does not challenge that the Supreme Court rightfully exercises full authority to regulate the practice of law, *see also Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961), and so it is clear that Greening must at least concede that the challenged efforts to control and fund bar activities bear a rational relationship to legitimate ends of government (which ends are maintaining the quality and availability of legal services in Illinois, *see Lathrop,* 367 U.S. 820, 81 S.Ct. 1826). As for Greening's complaint that he is being picked on unfairly (his equal protection claim), Defendant Moran again correctly notes that this is a selective enforcement issue, which requires that Greening be able to show that

> he was singled out for prosecution while others similarly situated were not prosecuted, and secondly, that the alleged selective decision to prosecute him was based on such impermissible grounds (discrimination) such as race, religion, or exercise of constitutional rights.

*Jarrett v. United States,* 822 F.2d 1438, 1443 (7th Cir.1987) (citations omitted). Even assuming Greening was "singled out" (as opposed, for instance, to being the only one caught), he has utterly failed to allege that "impermissible grounds" led to

that prosecution. This issue is thus ripe for ruling at this early stage.

■ As the above-discussed requests for relief have fallen, so fall the others. Greening's *fifth* and *sixth* posited grounds for relief argue that by virtue of the Supreme Court being the creator of the ARDC, the drafter of the Supreme Court Rules and Disciplinary Rules Greening is charged with violating, and the final arbiter of all questions of the construction and interpretation and of all disciplinary proceedings brought pursuant to those rules, and particularly by virtue of its being the final arbiter of Greening's case, Greening is being deprived of his right to a fair and impartial tribunal. Our first instinctive reaction to these claims is that they are premature—Greening may, after all, convince the Supreme Court that he should not be disciplined at all, which we are sure he would find eminently fair. Moreover, even if the proceedings are not fair, once they are concluded and he has proof that they weren't fair he can seek federal review of those proceedings by the Supreme Court. More fundamentally, inasmuch as Greening has not asserted that any Supreme Court Justice who will hear his cases has any direct, personal, substantial or pecuniary interest in the proceedings—that he will be acting as a judge in his own case—Greening has not alleged sufficient facts to raise a due process issue. *Aetna Life Insurance Co. v. Lavoie,* 475 U.S. 813, 821–22, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986); *Ward v. Village of Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972).

■ We are left now to consider only Greening's *third* and *ninth* grounds for relief. Collectively, these two grounds attack the LTF funding process as being without Illinois statutory or constitutional authority, and substantively claim that forcing Greening to comply with the (allegedly illegal) LTF funding process under threat of disbarment forces Greening to steal his clients' funds, and so deprives him of property without due process of law. Greening concedes that he has no clients' funds currently in the LTF pool, but he

says that's just the point—he faces disciplinary action precisely because he is not complying with D.R. 9–102(d)(3), and he is not merely asserting the rights of clients with funds subject to the provisions of D.R. 9–102(d)(3). Greening also claims that the Supreme Court, the ARDC, and the LTF are all in cahoots, and are working as co-conspirators to force honest and otherwise law-abiding attorneys to steal their clients' money.

Once again, our instinctive reaction is that this matter is in no way ripe for federal review. Disciplinary proceedings are neither pending nor imminent against Greening for violating D.R. 9–102, nor has Greening challenged these provisions in the state courts to allow those courts to define the terms which he bandies about. For instance, do these funding procedures really amount to a conversion or theft of clients' funds under Illinois law? Do the clients have any entitlement to the interest on those funds, such that depriving them of the interest is a taking of their property? (Notably, in other jurisdictions this latter question has been answered "No;" *see, e.g., Cone v. State Bar of Florida,* 819 F.2d 1002 (11th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987)). Is the LTF funding scheme really *ultra vires* under Illinois law? Greening has asked this Court to have the first crack at answering these and other questions which are at the foundation of his constitutional claims, but that's backwards—like other of Greening's claims, this is purely a question of state law not currently justiciable in this Court.

As the pleadings stand, the alleged constitutional violations are speculative at best, and are certainly not ripe for § 1983: as with negligence, constitutional violations in the air will not do. *See, e.g., International Longshoremen's & Warehousemen's Union, Local 37 v. Boyd,* 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954); *compare Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

■ We therefore agree with the LTF that Greening lacks standing to raise these concerns. It is true that Greening bypasses the necessity of arguing the rights of clients to the interest earned on the LTF funds by stating that his very non-compliance with the LTF funding procedures gives him standing. But as we noted earlier, Greening has wholly failed to allege that he is violating D.R. 9–102 by withholding funds subject to the LTF funding scheme. For all we know, Greening has no client funds at all. Without some concrete personal injury, or other stake in the outcome, Greening simply has no standing to assert the unconstitutionality of the LTF provisions. *See Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Cronson v. Clark,* 810 F.2d 662, 664 (7th Cir.), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 151 (1987).

■ We additionally agree with LTF that Greening's failure to allege that this Defendant acted under color of state law is fatal to this complaint, *see Barrio v. McDonough District Hospital,* 377 F.Supp. 317, 319–20 (S.D.Ill.1974), and that even if the allegations of color of state law were sufficient, Greening has failed to show that the LTF is a state actor for purposes of § 1983. Greening admits that the LTF is a private, not-for-profit corporation, and we simply disagree with his bald assertion that "[w]hat we have here is a symbiotic relationship in which the LTF acts as the fund manager and the expenditure mechanism and the Supreme Court which acts as the policy setter and the fundraiser." *See National Collegiate Athletic Association v. Tarkanian,* 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988).

We therefore find that at this time none of Greening's ten posited grounds for federal relief warrant any further consideration from this Court. These are negligible grounds for relief at best, and at least some of them border on the silly and the frivolous.

At any rate, the complaint utterly fails to state a claim upon which relief can be granted, and so dismissal pursuant to Rule 12(b)(6) is now appropriate. The complaint's failings, in addition, are caused by the facts alleged therein, and not by the failure to allege adequately; no purpose

would therefore be served by allowing leave to replead, and so we shan't.

### Abstention

■ Finally, we note that even if we were now not ruling on the merits of this case we would still be closing it, because the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), clearly applies here to Greening's justiciable claims.[7] As the Court stated in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 434–35, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982), federal suits involving state bar association disciplinary proceedings are subject to *Younger* abstention: "So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." Greening previously raised each and every justiciable constitutional claim included in this complaint in his responses filed with the ARDC, and there is no "extraordinary circumstance that would make abstention inappropriate" alluded to in the complaint; *Younger* therefore applies.

The elements identified by the Seventh Circuit for consideration in deciding whether to abstain are likewise met here. In *Pincham v. Illinois Judicial Inquiry Board*, 872 F.2d 1341, 1346 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 497, 107 L.Ed.2d 501 (1989), the court recognized that *Younger* abstention was appropriate if (1) there are ongoing state proceedings (here there are three); (2) the proceedings are judicial in nature (disciplinary proceedings before the ARDC most certainly are, *see Middlesex*, 457 U.S. at 433–34, 102 S.Ct. at 2522; *Kissell v. Breskow*, 579 F.2d 425 (7th Cir.1978)); (3) an important state interest is involved (here the state's interest in

"maintaining and assuring the professional conduct of the attorneys it licenses" is implicated, *Middlesex*, 457 U.S. at 434, 102 S.Ct. at 2522); and (4) the plaintiff has an opportunity to raise his constitutional challenges in the ongoing state proceedings (Greening has already done so here).

Hence, under all the precedent known to this Court, were we not now dismissing this suit on its merits, we would stay our hand anyway on the basis of *Younger v. Harris*. *See Cronson v. Clark*, 645 F.Supp. 793 (C.D.Ill.1986), *aff'd*, 810 F.2d 662 (7th Cir.), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 151 (1987).

### Preliminary Injunction

One final issue: Greening has filed a motion for a preliminary injunction aimed at (apparently) the upcoming evidentiary hearing before Judge J. David Bone, and any further proceedings in case M.R. 5916. We have now dismissed his underlying lawsuit, and so obviously he does not have any reasonable likelihood of succeeding on the merits to support his preliminary injunction. For that reason, his motion for a preliminary injunction is denied (we also question, without deciding, the existence of any irreparable harm from these proceedings).

*Ergo*, the motions to dismiss filed by each Defendant (d/e 6, 11, 17, and 19) are ALLOWED; this case is DISMISSED. Plaintiff's Application for a Preliminary Injunction (d/e 32) is DENIED.

Case CLOSED.

---

**7.** Further, to the extent the complaint asks us to review the pending disciplinary proceedings, our jurisdiction to do so is doubtful; *see Doe v. Pringle*, 550 F.2d 596 (10th Cir.1976), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); *Ginger v. Circuit Court for the County of*

*Wayne*, 372 F.2d 621 (6th Cir.), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998 (1967). Instead, the proper course is to seek certiorari review from the United States Supreme Court following conclusion of the proceedings.