**Alfred H. GREENING, Jr.,
Plaintiff–Appellant,**

v.

**Thomas J. MORAN, Individually and as former Chief Justice of the Supreme Court of Illinois, et al., Defendants–Appellees.**

**Nos. 90–3784 and 91–3379.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1991.*

Decided Jan. 8, 1992.

Rehearing and Rehearing En Banc Denied
Feb. 27, 1992.

* Appeal No. 91–3379 was submitted for decision    without argument.

LeGrand L. Malany (argued), Springfield, Ill., for plaintiff-appellant.

Rosalyn B. Kaplan, Charles R. Schmadeke, Asst. Attys. Gen. (argued), Office of the Atty. Gen., James J. Grogan, Wendy J. Muchman (argued), Attorney Registration & Disciplinary Com'n, Chicago, Ill., William S. Hanley (argued), Sorling, Northrup, Hanna, Cullen & Cochran, Springfield, Ill., for defendants-appellees.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Some people are tax protesters. Alfred Greening is a fee protester. Greening, admitted to the bar of Illinois in 1949, refuses to pay the annual fee to the Attorney Registration and Disciplinary Commission and was removed from the ARDC's roll of authorized practitioners on March 1, 1989. Greening believes that he owes nothing because the fee was levied by the Supreme Court of Illinois rather than the state legislature, and that at all events fees should be collected by the court rather than the commission. Between 1978 and 1988 Greening sent checks for his annual fees made out to the Supreme Court, which endorsed them to the ARDC. In fall 1988 Greening did not complete his annual registration form or pay the annual fee for 1989. That ensured his removal from the rolls; under Ill.S.Ct.Rule 756 any member of the bar

who neglects to pay the annual fee is suspended automatically until the sum (plus penalties) has been made good. In September 1989 Greening sent a cashier's check payable to the Clerk of the Supreme Court, which returned the instrument. (Greening placed this money, and the next year's payment, in escrow for the benefit of the court's Chief Justice.) Greening continued practicing law and has been convicted of contempt of court.

Greening says that he wants to vindicate the principle that governmental assessments must be authorized by the legislature and paid to governmental bodies. This is a proposition of state law—and the Supreme Court of Illinois has held that Greening misunderstands state law. Greening refuses to say die and filed this suit under 42 U.S.C. § 1983. Victory would serve interests other than his own. If the Supreme Court must collect the dues, then Robert Cronson, the Auditor General of Illinois, may audit its receipts and disbursements, the gleam of his eye for years. See *Cronson v. Clark*, 810 F.2d 662 (7th Cir.1987). Greening represented Cronson in that case, which we characterized as frivolous—so feeble that it did not even invoke the jurisdiction of the federal courts. All Greening has been able to achieve on his own behalf is to dig a deeper hole. The district court dismissed the complaint and awarded sanctions to some of the defendants under Fed.R.Civ.P. 11.

Greening filed suit against almost everyone having to do with the regulation of the bar in Illinois. His complaint names Justice Moran (Chief Justice of the Supreme Court of Illinois at the time of filing), all of the members of the ARDC, and the Lawyers Trust Fund of Illinois (and members of its board of directors)—all in both individual and official capacities. He seeks substantial damages. The district court dismissed the complaint. 739 F.Supp. 1244 (C.D.Ill.1990). The claims against the Trust Fund and its trustees failed for want of standing, and those against the Chief Justice and the members of the ARDC failed on twin grounds: absence of a claim on which relief may be granted, and abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The ARDC took Greening off its roll on March 1, 1989. A few months later the Administrator of the ARDC reported to the Supreme Court that Greening continued to hold himself out as a lawyer and asked the court not only to suspend him from its roll of attorneys but also to hold him in contempt of court. (The Supreme Court and the ARDC maintain separate lists of attorneys; the ARDC asked the Supreme Court to suspend Greening from its roll for the misconduct of practicing law while in default of dues.) Justice Ryan directed Greening to show cause why he should not be suspended. While the rule remained outstanding (Greening's response being a motion to vacate coupled with the checks made out to the Chief Justice and Clerk of the Supreme Court), and after the ARDC filed a supplemental report relating that Greening had appeared as counsel in an identified case, Greening filed this action under § 1983.

Shortly after Greening commenced the suit, the Supreme Court of Illinois issued a rule ordering Greening to show cause why he should not be held in contempt in light of his appearance on behalf of a client. It appointed Judge J. David Bone as its special master. Greening responded by asking the district court to issue a preliminary injunction against the proceeding. The district court denied this motion and dismissed the case outright, leading to this appeal. Meanwhile the proceedings continued in Illinois. Judge Bone held a hearing and filed a report relating the facts of Greening's practice of law; the report referred all legal issues to the Supreme Court. Greening and the ARDC filed briefs. In May 1991 the Supreme Court found Greening in contempt. After a separate oral hearing the court fined him $200. The final order of June 25, 1991, states in part:

> [Greening's] argument that removing his name from the Master Roll of Attorneys pursuant to the provisions of Supreme Court Rule 756 constitutes a violation of his due process rights because he is in compliance with "AN ACT to revise the law in relation to attorneys and counsel-

ors" (Ill.Rev.Stat.1989, ch. 13, par. 1 *et seq.*) and because the procedures prescribed by the Act were not followed here is an argument without merit. It is well established that it is exclusively within the prerogative of the Supreme Court to determine who shall be admitted to practice law in Illinois. While the General Assembly may adopt acts which relate to the practice of law "[s]uch statutes are merely in aid of, and do not supersede or detract from, the power of the judicial department to control the practice of law." *People ex rel. Chicago Bar Association v. Goodman* (1937), 366 Ill. 346, 349, 8 N.E.2d 941.

The Court also has considered [Greening's] other constitutional challenges made throughout the course of these proceedings, and we find them to be without merit.

The Supreme Court of the United States has denied Greening's petition for a writ of certiorari to review this decision. — U.S. ——, 112 S.Ct. 418, — L.Ed.2d —— (1991).

Greening insists that both the removal of his name from the ARDC's roll in 1989 and the contempt proceedings are unauthorized by Illinois law and violate the due process clause of the fourteenth amendment. He contends that the Supreme Court of Illinois could not afford him a fair hearing because it is interested in the outcome of a challenge to its own authority, that the lack of formal rules for the conduct of contempt proceedings makes the entire process unconstitutional, and that at all events the Supreme Court's unwillingness to use the procedures provided by state statute violates the Constitution. Arguments of the last kind we have called frivolous as a matter of law, see *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir.1987), because the Supreme Court has held that the federal Constitution does not require states to follow their own procedural rules. The district court rejected this and all of Greening's other arguments on the merits, 739 F.Supp. at 1250–55, then added, *id.* at 1256, that the suit would fail in any event under *Younger* and *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102

S.Ct. 2515, 73 L.Ed.2d 116 (1982). See also *Pincham v. Illinois Judicial Inquiry Board,* 872 F.2d 1341 (7th Cir.1989).

Although we appreciate the judge's desire to demonstrate to other persons that claims of the sort Greening presses are doomed, it is not appropriate to address the merits in a case to which *Younger* applies. *Younger* does not pave a one-way street in which defendants may prevail on the merits but cannot lose. *Younger* abstention is appropriate only when resolution of the federal defenses belongs in the state forum. To say that abstention is in order then is to say that federal courts should not address the merits, period. *Silence* by the federal court is the objective of abstention; the desirability of silence is the reason for abstention. When there is an ongoing state proceeding, whether to abstain is the *first* question, and an affirmative answer brings the case to an end.

Abstention was appropriate in June 1990, when the district judge resolved the case. In August 1989, seven months before Greening commenced this suit, the Supreme Court of Illinois ordered him to show cause why he should not be suspended from practice. Such a proceeding, before the Supreme Court itself, is judicial in nature. See *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 477–79, 103 S.Ct. 1303, 1312–13, 75 L.Ed.2d 206 (1983); *In re Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945). Only seven days after Greening filed his complaint, the Supreme Court of Illinois directed him to show cause why he should not be held in contempt of court. The contempt proceeding was criminal litigation, with the ARDC as prosecutor—and Greening acknowledged its judicial nature by asking the Supreme Court of the United States to review the ensuing fine. He wanted the district court to enjoin the contempt proceeding. *Younger* applies with full force to a request for an injunction against a criminal prosecution in which the state tribunal stands ready to entertain federal defenses. That the putative state defendant managed

to get the federal suit under way first is inconsequential. *Hicks v. Miranda,* 422 U.S. 332, 348–50, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

Now that the state proceeding has reached its end, abstention is no longer appropriate. The Supreme Court of Illinois rejected Greening's constitutional arguments on the merits—and if he withheld from the state tribunal some of the points he makes here, Greening has only himself to blame. We apply the same rules of preclusion Illinois uses. 28 U.S.C. § 1738; *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In Illinois, a final decision is preclusive not only on claims and defenses actually presented but also those that could have been presented. E.g., *Frier v. Vandalia,* 770 F.2d 699 (7th Cir.1985), and *Button v. Harden,* 814 F.2d 382 (7th Cir.1987), both collecting Illinois cases. Greening could not undertake fresh litigation in Illinois seeking a declaration that he is entitled to practice law without paying the annual fee, or damages from members of the ARDC. So Greening loses outright—but on claim preclusion (res judicata), rather than on an independent federal consideration of the merits.

So far, our discussion has dealt only with Greening's claims against the ARDC and Justice Moran. None of the proceedings in state court concerned the Trust Fund. The district judge rightly dismissed Greening's claims against the Trust Fund and its directors for want of a case or controversy. Rule 1.15(d) of the Rules of Professional Conduct issued by the Supreme Court of Illinois requires lawyers to deposit funds held for their clients in interest-bearing trust accounts. The interest from these accounts is to be turned over to the Trust Fund, which uses the money to assist indigent litigants. Greening lacks a justiciable dispute with the Trust Fund, the district court held, because he has not alleged that he possesses any client funds covered by Rule 1.15(d). 739 F.Supp. at 1254–55. "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The court thought that Greening failed at every step. After it dismissed the complaint Greening filed an affidavit stating that "he has maintained an account during his practice of 40 years that could qualify as an account subject to" Rule 1.15(d). The district court thought this insufficient, writing that it is "untimely, ambiguous, and contradicted by Greening's previously stated position." Nothing in the complaint or affidavit, the district court held, establishes a concrete controversy. This shortcoming is so apparent, it thought, that sanctions under Rule 11 are in order. The court ordered Greening to pay $8,737.74 to offset part of the expenses the Trust Fund and its members incurred in defending against his claims.

Complaint, affidavit, and appellate briefs together fall short of establishing a case or controversy between Greening and the Trust Fund. The Fund has never claimed entitlement to interest from any client funds Greening holds—if indeed Greening holds any. His affidavit does not say that Greening possesses one penny of client trust funds or anticipates receiving any in the future. Greening's affidavit contains no *facts;* he offers only a bare conclusion that an "account" of unknown attributes "could" be within the rule. Although failure to comply with Rule 1.15(d), or any other of the state's ethical rules, may lead to discipline, no proceeding charging noncompliance with Rule 1.15(d) is under way or in the offing. One of Greening's appellate briefs shows his thinking: "Greening challenged all revenue raising by court rule not authorized by the State Constitution or legislative enactment. Therefore, the subject matter of his challenge necessarily included the Lawyer's Trust Fund." In addition to revealing that his objection to the Trust Fund is grounded in state law, this says that Greening sued the Fund not because of a concrete controversy but because he sought to cover the waterfront. A litigant's desire to vindicate a position does not establish standing. *Lu-*

*jan v. National Wildlife Federation,* —— U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

Even if we take the affidavit for all it could be worth, and acknowledge Greening's concern that state officials may try to retaliate against him for suing Justice Moran and the ARDC, still Greening has no dispute *with the Trust Fund.* The Fund is a depository. Its board does not initiate or decide disciplinary matters. Initiation and prosecution are functions of the ARDC, decision a function of the judiciary. If Rule 1.15(d) is unconstitutional, relief would run against the ARDC or court. Greening is not entitled to the interest, which belongs to his clients if not to the Fund. He has never attempted to grapple with the implications of the fact that his dispute is not with the designated recipient of the interest.

■ Judge Mills found that by filing the complaint without investigating the problem of standing, and without alleging that he had any funds subject to Rule 1.15(d), Greening and his lawyer LeGrand L. Malany violated Rule 11. Their brief on appeal from the order awarding the sanction reargues the substance of the standing decision. They neither acknowledge the deferential standard of appellate review, see *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2457–61, 110 L.Ed.2d 359 (1990), and *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928 (7th Cir.1989) (in banc), nor try to show that the district court abused its discretion. Much of their submission actually supports the district court's decision. They pin their argument for standing on an asserted fear that "the [Supreme] Court would retaliate against [Greening] for raising issues it refused to address." This has nothing to do with the Fund; Greening does not assert that he feared that *it* would retaliate, and at all events even well-grounded fear justifies no more than an injunction. Yet his complaint did not ask for an injunction against the Fund or its directors; instead

Greening demanded $775,000 in damages from the directors, who he named in their individual as well as their official capacities. Three of the nine persons Greening named as defendants (David C. Hilliard, Peter H. Lousberg, and John J. Vassen) were not directors at the time of the complaint, so damages for past wrongs is the only relief Greening seeks from them. Yet although Greening has never identified any wrong these persons committed, he has retained them as parties. Even by the standards of Greening's professed objectives, his complaint is an inexcusably slipshod document.

The directors' brief in this court puts the matter aptly: "The two attorneys [Greening and Malany] . . . have cost the needless expenditure and diversion of funds earmarked for legal services to the indigent and the defense of personal liability claims against fellow practitioners who have volunteered their time and expertise to the administration of that program." Rule 11 requires pre-filing investigation of both factual and legal aspects; the district court found that no such investigation preceded this suit. The court did not abuse its discretion in awarding sanctions. (Greening and Malany do not contest the amount.)

■ Sanctions under Rule 11 are not the end of the matter. The Trust Fund will not retain the full value of the sanction (and thus indigent litigants who are the Fund's beneficiaries will be worse off) if it is out of pocket the costs of defending Greening's appeals. Yet appeals need not erode the value of the award to the wronged party. Frivolous appeals are sanctionable under Fed.R.App.P. 38. The Supreme Court observed in *Cooter & Gell,* 110 S.Ct. at 2462, that "courts of appeals have ample authority to protect the beneficiaries of Rule 11 sanctions by awarding damages and single or double costs under Rule 38–which they may do, as we have noted, when the appellant had no reasonable prospect of meeting the difficult standard of abuse of discretion." Greening and Malany, who have not even *acknowledged* that appellate review is deferential, "had no reasonable prospect of

meeting the difficult standard of abuse of discretion."

The frivolous appeal on sanctions is the capstone of litigation that is hollow in every particular. We told Greening in *Cronson v. Clark* that who has the power to assess and collect annual fees from the Illinois bar is a question of Illinois law. Greening is back, with a different patina but the same agenda—to "challenge[ ] all revenue raising by court rule not authorized by the State Constitution or legislative enactment." His arguments against the ARDC included one that *Szabo* held sanctionable as a matter of law, plus others that had no prospect of escaping *Younger* let alone of succeeding on the merits. These appeals have done nothing beyond heaping extra litigation expense on the defendants. Litigants ordinarily bear their own costs, but Greening has multiplied the proceedings, adding a federal overlay to the ongoing state case. Cf. *Wisconsin v. Glick,* 782 F.2d 670 (7th Cir.1986); *In re TCI Ltd.,* 769 F.2d 441 (7th Cir.1985). Costs attributable to that multiplication properly are borne by Greening and Malany. The outcome of these appeals was "foreordained by the lack of substance to the appellant[s'] arguments." *Mars Steel,* 880 F.2d at 938. We conclude that both appeals are frivolous and that the appellees are entitled to damages under Rule 38 and 28 U.S.C. § 1927 equal to the legal fees and other expenses they have incurred in this court. Greening and Malany are jointly and severally liable for these damages. Appellees have 15 days to submit statements of the fees and costs reasonably incurred.

AFFIRMED, WITH SANCTIONS.