41 F.3d 1511
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donnelly SMITH, Plaintiff/Appellant,
v.
Captain William BALL, Defendant/Appellee.
 No. 93-2526.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 26, 1994.*
Decided Nov. 15, 1994.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Dec. 30, 1994,
 
 Before FAIRCHILD, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Donnelly Smith brings this action under 42 U.S.C. Sec. 1983, alleging that William Ball, a correctional officer at the Waupun Correctional Institution in Waupun, Wisconsin violated his constitutional rights during the course of a strip search. Smith, who refused to present the required portions of his body for visual inspection, claims that, as a result of his refusal, he was subjected to "unreasonable" and forced searches that violated his Fourth Amendment rights, and cruel and unusual punishment in violation of his Eighth Amendment rights. The district court granted summary judgment in favor of the defendants. See Bell v. Wolfish, 441 U.S. 520, 558-561 (1979) (upholding visual body-cavity inspections on less than probable cause). Smith asserts that the district court failed to review all his claims. After reviewing the record de novo, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), including the videotape of the second forced strip search, we find the district court's order of June 17, 1993 to address all claims[1] and correct in finding no genuine issues of material fact; we AFFIRM for the reasons stated therein.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 EASTERN DISTRICT OF WISCONSIN
 
 2
 Donnelly Smith, Plaintiff,
 
 
 3
 v.
 
 
 4
 Capt. W. Ball, Defendant.
 
 Civil Action No. 92-C-651
 ORDER
 
 5
 TERENCE T. EVANS, Chief Judge.
 
 
 6
 Donnelly Smith, an inmate at the Waupun Correctional Institution, filed this civil rights action, pursuant to 42 U.S.C. Sec. 1983, alleging that two strip searches conducted during a lock-down at the institution violated his constitutional rights. The defendant, Captain William Ball, was a correctional officer involved in both searches. Cross-motions for summary judgment are pending.
 
 
 7
 The undisputed facts show that on May 28, 1992, corrections officials were conducting a cell-to-cell search during a lockdown of the institution, pursuant to Wisconsin Administrative Code Sec. DOC 303.14. As part of the search of the prison, strip searches were conducted of each inmate, pursuant to Wis.Admin.Code Sec. DOC 306.16(3)(d).
 
 
 8
 When the search reached his cell, Mr. Smith complied with requests to remove his clothes, raise his arms, open his mouth, run his fingers through his hair and behind his ears, raise his genitals, and raise his feet, one at a time. However, when he was told to bend over and spread the cheeks of his buttocks, he refused. The conduct report for this incident alleges that he was given a direct order and "[h]e refused and called me 'Punk Mother fucking fag.' Inmate Smith'[s] statement caused other inmate to yell and laugh." Mr. Smith contends that he has psychological problems with "bending over and spreading my cheeks with several grinning individuals there to see it." After approximately 10 minutes, he was handcuffed and taken to the adjustment center, where Captain Ball searched him; the searched included a visual inspection of the rectal cavity.
 
 
 9
 As a result of the conduct report, Mr. Smith was found guilty of disobeying orders, disrespect, and threats. He was found not guilty of disruptive conduct.
 
 
 10
 The second search occurred on June 8, 1992, while Mr. Smith was still in the adjustment center because of his actions in the May 28th incident. The cell-by-cell search of the institution had reached the adjustment center and Mr. Smith was again being required to submit to a strip search. He again refused. After a period of time, correctional officers determined that they would perform a "cell extraction," that is, that they would forcibly remove Mr. Smith from his cell. Then they would take him to another adjustment center cell where he was restrained, his clothes were removed, and he was subjected to a strip search, including a visual inspection of the rectal cavity.
 
 
 11
 After the search was completed, Mr. Smith was held in restraints for a period of time. The restraints were checked by a nurse, who concluded that the left wrist restraint was too tight. It was then loosened. A correctional officer checked on Mr. Smith every 15 minutes during this period.
 
 
 12
 The cell extraction, the removal to the second cell, restraining him, and the search were recorded on videotape.[1] The tape is part of the record. What the videotape shows is that a cell extraction and a strip search are violent, grotesque, and demeaning events. One wonders what a late-21st-century observer of this videotape might think of our civilization.
 
 
 13
 Mr. Smith alleges that the searches were without probable cause, that they violated the eighth amendment's prohibition against cruel and unusual punishment, and that they were in violation of the Wisconsin Administrative Code.
 
 
 14
 Because a prison is a "unique place fraught with serious security dangers," prisoners have reduced fourth amendment protections. Bell v. Wolfish, 441 U.S. 520, 558 (1979). Though upholding strip searches makes courts uneasy, the searches have been held to be constitutional. See Campbell v. Miller, 787 F.2d 217 (7th Cir.1986), cert. denied, 479 U.S. 1019.
 
 
 15
 Mr. Smith argues that because he had been searched once, on May 28th, and then had been held in the adjustment center under strict control, there was no justification for the second search. The defendant argues, basically, that nothing is sufficiently controlled to prevent the passing contraband and therefore Mr. Smith could be required to submit to the second search as the sweep proceeded through the adjustment center. On this point the defendant prevails.
 
 
 16
 The defendant all but concedes that the searches violated the Wisconsin Administrative Code Sec. DOC 306.16(1)(b) because of the failure to keep required records of the searches. However, the defendant states, correctly, that the United States Constitution does not require that states follow their own procedural rules. Greening v. Moran, 953 F.2d 301 (7th Cir.1992). Mr. Smith cannot prevail on this theory.
 
 
 17
 That leaves the issue of cruel and unusual punishment. Mr. Smith contends that the officers used excessive force in removing him from his cell and searching him, that they failed to use appropriate safeguards once he was in restraints, and that the restraints were on too long. As I stated above, the videotape shows the grotesque nature of the event. It shows five guards in riot gear, including helmets, full body suits, and padded shields. The men entered the cell, subdued and shackled Mr. Smith. Other officers without riot gear were also present. One closely observed the entire episode. Another helped with the shackling. After Mr. Smith was placed in restraints, his clothes were removed and the search proceeded. All of this was accomplished during a shower of profanity (the term "mother fucker" is heard at least a hundred times) from Mr. Smith and other inmates in neighboring cells.
 
 
 18
 Courts accord prison administrators wide-ranging deference in running the prisons. See Pardo v. Hosier, 946 F.2d 1278 (7th Cir.1991). A court would not, I think, presume to know whether all those people were necessary to perform the "cell extraction." But that is not the issue: "excessive force" does not mean "excessive numbers of guards." The issue is whether the force which was used was applied maliciously and sadistically to cause harm. Hudson v. McMillian, --- U.S. ----, 112 S.Ct. 995 (1992). There is nothing in this record which would support a finding that the guards acted maliciously and sadistically toward Mr. Smith. They were searching everyone in a sweep of the prison during a lock-down. Furthermore, the tape does not show any gratuitous violence or excessive force directed toward Mr. Smith. It is not possible to see much of what is going on inside the cell. Although the tape does not show conclusively that Mr. Smith was not mistreated in some way, it does show that he was not beaten or clubbed. And, one must remember that the officers acted only because Mr. Smith refused to comply with their requests, a stance which, as an inmate in a prison, is not very smart.
 
 
 19
 As to Mr. Smith's other contentions, it seems clear that precautions were taken, once he was in restraints, to ensure that he was not injured. The length of time he was restrained, 3 1/2 hours,[2] does not violate the Constitution under the circumstances and with the precautions taken here.
 
 
 20
 According, IT IS ORDERED that plaintiff's motion for summary judgment is DENIED.
 
 
 21
 IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED. This case is DISMISSED.
 
 
 22
 Dated at Milwaukee, Wisconsin, this 17 day of June, 1993.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Smith has filed such a statement. After considering that statement, the briefs and the record, the request for oral argument is denied and the appeal is submitted on the briefs and the record
 
 
 [1]
 Smith asserts that the district court failed to address the extension of his mandatory release date. Even if appropriate in a Sec. 1983 action, no reference to this issue is made in Smith's claim; accordingly, the district court correctly did not consider the issue
 
 
 [1]
 Videotaping these incidents is a very good idea
 
 
 [2]
 The prison observation records and the affidavit of Captain Ball both show that Mr. Smith was held in restraints for 3 1/2 hours. The defendant's brief incorrectly states that it was approximately 2 hours. Brief filed December 9, 1992, p. 3